693 So.2d 286 (1997)
STATE of Louisiana
v.
Bridgette GIBSON.
No. CR97-108.
Court of Appeal of Louisiana, Third Circuit.
April 30, 1997.
*287 Gary C. Tromblay, Asst. Dist. Atty., Opelousas, for State.
Paula C. Marx, Lafayette, for Bridgette Gibson.
Before DOUCET, C.J., and PETERS and SULLIVAN, JJ.
PETERS, Judge.
The defendant, Bridgette Gibson, was charged by a grand jury with vehicular homicide, a violation of La.R.S. 14:32.1. A trial by jury was held on September 24, 1996, with the jury returning a verdict of guilty as charged. The defendant was subsequently sentenced to serve a term of nine years at hard labor, with one year of the sentence being without the benefit of probation, parole, or suspension of sentence. Additionally, she was ordered to participate in a courtapproved substance abuse program and a court-approved driver improvement program. After her motion to reconsider sentence was denied, the defendant appealed her conviction and sentence.

DISCUSSION OF THE RECORD
The automobile accident giving rise to this criminal charge occurred on Interstate Highway 49 (I-49) in Opelousas, Louisiana, in the early evening of March 17, 1996. A vehicle being driven north on I-49 by the defendant crossed the grassy median separating the north and south lanes of the interstate, became airborne, and collided with a southbound vehicle being driven by Miranda Marie Ross, a twenty-year-old nursing student. Ms. Ross was pronounced dead at the scene. The defendant had been drinking heavily before the accident, and three hours after the accident, her blood-alcohol concentration was 0.17 percent by weight based upon grams of alcohol per 100 cubic centimeters of blood. It is not disputed that the defendant was under the influence of alcohol at the time of the accident.
*288 There is also little dispute concerning the events leading up to the accident. On the afternoon of the accident[1] the defendant met her friend, Michelle Roberts, in Opelousas at Ms. Roberts's mother's home, and the two women began an evening of riding around and consuming alcohol. According to Ms. Roberts, the defendant arrived with a beer in her hand. Ms. Roberts testified that she and the defendant first traveled to the defendant's home to put oil in the defendant's car. A party was in progress next door, and the two women were given a cup of gin. This gin was mixed with a bottle of Thunderbird wine[2] purchased at an Opelousas service station, and the two women consumed the mixture as they drove around. Their travels next took them to Washington, Louisiana, where they attended a local fair and visited with the defendant's father, Chief of Police John Offord. Despite Chief Offord's warning not to drink and drive, the two women purchased a fifth of Thunderbird wine before leaving Washington and consumed it as they continued their travels. According to Ms. Roberts, another fifth of Thunderbird wine was purchased at a service station in Sunset, Louisiana, and a final bottle of the wine was purchased in Lafayette, Louisiana.[3]
According to Ms. Roberts, the two women were drinking from large mugs which each held one-half of a fifth of wine and as they purchased the wine, they would pour it into the mugs and throw away the bottles. Ms. Roberts testified that she and the defendant were sharing the alcohol equally and that by the time they reached Gerard Park in Lafayette, they had drunk all but the fourth fifth of wine. According to Ms. Roberts, they then consumed the last of the alcohol at the park and proceeded toward home because the defendant was scheduled to be home before dark to help her daughter make a poster for school. Ms. Roberts admitted that she was "drunk" when the two women left the Lafayette park.
The defendant testified that she did not have a beer in her possession when she met Ms. Roberts and that she had only one beer before that time. Additionally, she testified that she had only a "taste" of the gin. While not agreeing entirely with Ms. Roberts's testimony, the defendant did admit that she helped to consume at least a pint and two fifths of Thunderbird wine from the time she and Ms. Roberts began their spree until the time of the accident. Despite her consumption of this wine, she testified that she did not have as much to drink as Ms. Roberts because she had not refilled her glass every time Ms. Roberts had refilled hers. She did acknowledge that immediately before the accident, she felt "woozy," which to her meant that she was not sober but was not drunk either.
Neither the defendant nor Ms. Roberts had an explanation for the accident. Ms. Roberts testified that she was sleepy and had begun to doze. She recalled that the defendant was traveling in the left lane of the interstate and was northbound. Immediately before the accident, she felt the automobile vibrate but did not recall crossing the median or striking the victim's vehicle. In fact, after feeling the vibration, the next thing she remembered was being upside down in the wrecked vehicle and held up only by her seat belt.
Jarrett Deville of Scott, Louisiana, was an eyewitness to the accident, which, according to him, occurred just as it was turning dark. He was traveling south on I-49, and Ms. Ross had gradually passed him in the left lane immediately before the accident. Mr. Deville testified that he observed vehicle lights in the northbound lane of I-49 "kinda moving erratically .... from side to side, going up and down, kinda going in and out the lane." He further testified that he observed the defendant's vehicle leave the *289 northbound roadway, reenter the northbound roadway, exit again, and finally cross over the median. According to Mr. Deville, when the vehicle crossed over the median, it went airborne and crashed into the windshield of Ms. Ross's vehicle. Mr. Deville testified that immediately after the accident, the defendant expressed to him that she thought that Ms. Ross had hit her. Mr. Deville did not observe any other cars in the vicinity of the defendant before the collision, and the defendant did not complain to him of any mechanical or tire failure that may have caused the collision.
Officer Scott Aymond of the Opelousas Police Department investigated the scene of the collision and found that the right wheel of the defendant's car was damaged as a result of the impact. He also inspected the northbound lane and concluded that the defendant's car had partially left the pavement and that it had traveled some 288.6 feet with only its right wheels on the paved surface. According to Officer Aymond, the vehicle then abruptly reentered the highway and traveled another 131.2 feet in the northbound lane before it again left the paved surface and traversed the median. Officer Aymond measured the distance that the defendant's vehicle traveled across the median before the impact and found it to be 183 feet. He also examined the northbound lanes and found no defects or potholes which might have contributed to the accident. The weather was clear, and the highway was dry on the day of the accident. In Officer Aymond's opinion, the defendant must have been driving over sixtyfive miles per hour in order to have launched the vehicle into the air after crossing the median. Despite the evidence of these drastic maneuvers by the defendant before the accident, Officer Aymond found no sign of braking on the highway. When questioned concerning damage to the defendant's car, he testified that it would not be unusual for the impact alone to have caused the extensive damage. According to Officer Aymond, the defendant did not complain of mechanical failure and did not even remember what had happened immediately before and during the collision. His opinion was that the intoxicated condition of the defendant and her operation of the car caused the collision.
Dr. Sylvan Manuel, the coroner for St. Landry Parish, testified concerning Ms. Ross's fatal injuries and also concerning how alcohol affects perception. It was his professional opinion that alcohol, as a depressant, could make someone react slowly and could give a false sense of confidence which could cause a person to take chances she would not ordinarily take. Regarding whether the defendant's level of intoxication could have been a contributing factor to the collision, Dr. Manuel stated: "It's my professional opinion that from the cops, I learned from them, and what I saw this morning, that this lady with a .17 alcohol could have done all of this.... I would expect it, it wouldn't be unusual for her to do this." He further testified that he would have expected the defendant's level of intoxication to be a contributing factor in the accident.
Louisiana State Trooper Wayne Richard also testified as an accident reconstruction expert for the state. Based on his evaluation of the evidence gathered by Officer Aymond, Trooper Richard was of the opinion that the defendant was traveling at an excessive rate of speed and that her high level of intoxication was a contributing factor of the collision.
In her appeal, the defendant asserts four assignments of error:
1. The state failed to prove beyond a reasonable doubt that the defendant's blood-alcohol concentration combined with her operation of a vehicle to cause the death of the victim; therefore, the jury verdict finding the defendant guilty of vehicular homicide fails to meet the legal standard for sufficiency of the evidence.
2. The trial court erred in permitting Trooper Wayne Richard to testify, over objection, as to various levels of intoxication and the effects thereof.
3. The trial court erred in failing to balance its expressed sympathy for the victim with acceptable penal goals in sentencing the defendant.
4. The sentence imposed by the trial court is unconstitutionally excessive *290 and constitutes cruel and unusual punishment.
For the reasons set forth below, we find these assignments to be without merit and affirm the defendant's conviction and sentence.

OPINION
The defendant first contends that the state failed to prove beyond a reasonable doubt that her blood-alcohol concentration, combined with her operation of the vehicle, caused the death of Miranda Marie Ross. In her second assignment of error, she contends that the trial court erred in permitting Trooper Richard to testify about various levels of intoxication and the effects thereof. Since both of these assignments of error address the question of the sufficiency of the evidence, they will be considered together.
The crime of vehicular homicide is defined by La.R.S. 14:32.1, which reads in pertinent part as follows:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, vessel, or other means of conveyance whether or not the offender had the intent to cause death or great bodily harm whenever any one of the following conditions exists:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
(3) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.
The Louisiana Supreme Court has held that "under the vehicular homicide statute, the state, in order to convict, must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being." State v. Taylor, 463 So.2d 1274, 1275 (La. 1985). "It is insufficient for the state to prove merely that the alcohol consumption `coincides' with the accident." State v. Archer, 619 So.2d 1071, 1074 (La.App. 1 Cir.), writ denied, 626 So.2d 1178 (La.1993).
While acknowledging that her blood-alcohol concentration exceeded the limits of La. R.S. 14:32.1(A)(2), the defendant contends that she left the roadway, not because she was under the influence of alcohol, but because she was trying to pick up a cassette tape off of the floor of her vehicle. In her testimony, she speculated that she "probably ran off the road or something" as she tried to retrieve the tape.
After viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of vehicular homicide proven beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). The state established beyond a reasonable doubt that a human being was killed, that the death was caused directly by the defendant's operation of a motor vehicle, and that the defendant's blood-alcohol-concentration exceeded 0.08 percent by weight based upon grams of alcohol per 100 cubic centimeters of blood. Additionally, we find that the state proved beyond a reasonable doubt that the defendant's intoxication or alcohol level was a contributing factor of the accident. The trial court found no evidence of the involvement of any other factor, such as a third vehicle, mechanical failure, or a highway condition that would have been an intervening cause. We agree with that determination.
We also find no merit in the defendant's assertion that the trial court erred in allowing Trooper Richard to testify about various levels of intoxication and the effects thereof. Although the trial court never accepted Trooper Richard as an expert in this regard, we note that Trooper Richard testified that he had been a state trooper for six and one-half years and had been involved in law enforcement for eleven years. He had been trained on the effects of alcohol at the Louisiana State Police Academy; had investigated *291 a "couple of hundred" accidents in his career, including many involving alcohol; and had administered field sobriety tests on individuals in various states of intoxication. "A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert." State v. Lowery, 609 So.2d 1125, 1128 (La.App. 2 Cir.1992), writs denied, 617 So.2d 905 (La.1993).
The trial court could have found that Trooper Richard had sufficient personal knowledge to testify as to degrees of intoxication. Additionally, the trial court could have found that Trooper Richard's knowledge and training in matters of intoxication were included within his expertise. "The question of whether a witness is an expert, the scope of his expertise and breadth of his opinion are for the most part within the discretion of the trial judge. Absent an abuse of discretion, the trial judge's decision should not be overturned." State v. Brossette, 93-1036, p. 20 (La.App. 3 Cir. 3/2/94); 634 So.2d 1309, 1321, writ denied, 94-0802 (La.6/24/94); 640 So.2d 1344. The trial judge in the case sub judice determined that the state laid the proper foundation to support questioning on the subject of levels of intoxication. Additionally, Trooper Richard's testimony corroborated Dr. Manuel's statements regarding the level of intoxication of a person with a 0.15 blood-alcohol concentration. Even if we were to conclude that the trial court erroneously allowed Trooper Richard to testify concerning the various levels of intoxication, such error would be harmless error. See State v. Johnson, 94-1379 (La.11/27/95); 664 So.2d 94.
The last two assignments of error relate to the defendant's sentence. The defendant claims that the trial court erred in failing to balance its expressed sympathy for the victim with acceptable penal goals in sentencing her and that the sentence imposed is unconstitutionally excessive and constitutes cruel and unusual punishment.
La.R.S. 14:32.1(B) provides:
Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than two years nor more than fifteen years. At least one year of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. The court shall require the offender to participate in a court-approved substance abuse or a court-approved driver improvement program, or both.
Thus, the defendant's nine-year sentence was in the mid to high range of the applicable sentence for this crime.
We find that the case sub judice is very similar to State v. Trahan, 93-1116 (La.App. 1 Cir. 5/20/94); 637 So.2d 694, wherein the defendant received three concurrent ten-year terms at hard labor after being convicted of three counts of vehicular homicide. The defendant was considered a first felony offender, having never received even a speeding ticket, but the trial court found his lack of remorse and lack of interest in the victims to be aggravating factors. The twenty-two-year-old defendant had a three-year-old son, and his wife was expecting another child. The court found it extremely disturbing that the defendant was observed drinking at a bar and driving away while on bail, awaiting trial on the case. The sentences were affirmed on appeal.
In the case sub judice, the defendant admitted that she had driven while drinking before this incident, and between arraignment and trial, she was arrested and pled no contest to disturbing the peace by being drunk. During sentencing, the trial court stated:
Some of the factors that I've had to consider in reaching the sentence that I am getting ready to impose upon the defendant, were not only the qualities obviously of Miranda, not only the horror of the offense. The statute creates the intoxication level at .08. In this case my recollection is that the intoxication level was .17, which is double the level provided by the statute. The evidence was also to the effectI think that this was a stipulated to numberthe evidence was also to the effect that I believe that this was the results of a test that was given I want to say two *292 or three hours after the incident. It doesn't take a rocket scientist to figure out. I know they've got a formula. I'm not smart enough to work the formula or even to quote the formula, but there is a formula that would certainly indicate to me that the .17 was obviously higher than that at the time of this accident. There is information in the file that is what I call the inherent contradiction in the life of the defendant. Ms. Gibson is thirty-three years of age. She's married and has four young minor children. Apparently, a bright young person; two years of college education, graduated, and I guess it's coincidental also, graduated in the top of her class in nursing at T.H. Harris. Yet, she's had no meaningful employment since 1986. Apparently she's had some problems with alcohol, beer, wine, gin. Also, apparently some trial and error with marijuana. Ms. Gibson, you've also apparently had some problem with alcohol since this incident. Although it was not a traffic matter, apparently a disturbing the peace that you entered a plea of guilty to.
The supreme court recently reversed this court's vacation of a nine-year sentence for vehicular homicide and reinstated the sentence in State v. Cook, 95-2784 (La.5/31/96); 674 So.2d 957, cert. denied, ___ U.S. ___, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). In that case, the defendant was a single mother, maintained gainful employment, and had no prior felony conviction specifically related to alcohol abuse or operation of a vehicle.
In State v. Green, 418 So.2d 609 (La.1982), the court found that concurrent sentences of three years at hard labor for two counts of negligent homicide, a five-year felony offense, were not excessive, although the defendant was a hardworking single mother with no criminal record.
The defendant's sentence is in the mid to high range of sentencing possibilities and is not excessive considering the circumstances of the crime. The defendant had been drinking almost all day, then drove from Opelousas to Lafayette and back even after being warned to not drink and drive by her father. She remembers nothing of the accident. The impact was so great that Ms. Ross was killed instantly and the engine and transmission flew out of the defendant's car. The defendant's lack of remorse and failure to refrain from drinking further justify the sentence. Therefore, the defendant's assignments of error relative to the sentence are without merit.

DISPOSITION
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] It is not clear from the record exactly when the two women met. Ms. Roberts was not sure of the time when they began their activities, and the defendant testified that it was between 3:00 and 4:00 p.m. Given the number of places the two women traveled to, the meeting could have been earlier in the afternoon.
[2] Ms. Roberts described this bottle as a fifth of wine, while the defendant testified that it was a pint.
[3] The defendant denies purchasing and consuming the fifth of wine that Ms. Roberts testified was purchased in Sunset.