762 So.2d 1139 (2000)
STATE of Louisiana
v.
Tony BOURQUE.
No. 99-1625.
Court of Appeal of Louisiana, Third Circuit.
June 21, 2000.
*1140 Elizabeth A. Long, David C. Willard, Willard and Long, Lafayette, LA, Counsel for Defendant-Appellant.
Keith Stutes (District Attorney's Office), Lafayette, LA, Counsel for Plaintiff-Appellee.
(Court composed of NED E. DOUCET, Jr., Chief Judge, SYLVIA R. COOKS, and OSWALD A. DECUIR, JJ.)
COOKS, Judge.
A jury found Tony Bourque guilty of two counts of aggravated rape. He appeals, arguing his sentences are excessive and the evidence is insufficient to support his convictions. For the following reasons, we affirm the jury's verdict and the sentences imposed by the trial judge.

FACTS
This case involves the rapes and brutal beatings of Sheila McGay and Angela Marcelin. On separate occasions, the women were taken to an isolated farm area, vaginally and anally raped and severely beaten. They identified Thomas Emery and Tony Bourque as the perpetrators of the crimes. Emery died prior to trial. A jury found Bourque committed two counts of aggravated rape. After he was sentenced to serve two consecutive life terms, Bourque lodged this appeal.

ASSIGNMENTS OF ERROR
On appeal, Bourque assigns the following errors for our review:
I. There is insufficient evidence to prove beyond a reasonable doubt he committed the offenses.
II. The trial court erred in limiting the testimony of Officer McCullan Gallien.
III. The consecutive life sentences are constitutionally excessive.

INSUFFICIENT EVIDENCE
In his first assignment of error, Bourque argues the jury's verdict is not supported by the evidence. He contends, even if the evidence is sufficient to prove he had sex with the women, the acts of intercourse the victims alleged occurred were consensual. According to Bourque, the evidence merely shows the women were engaged in voluntary acts of prostitution with him at one location; and, they were subsequently *1141 beaten at another location. To support his view of the evidence, Bourque points out there was considerable distance between the area where the used condoms with his DNA were discovered and where the victims' blood droppings from the beatings were found.
When the issue of sufficiency of the evidence is raised on appeal, this court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational fact finder could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When applying the "rationality standard," we are obligated to respect the trial court's credibility determinations, rather than second-guess them. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
Sheila Carmouche McGay testified on February 23, 1997, while walking to the store, she was "knocked out" and abducted. After regaining consciousness, she found herself riding in a truck with two white men, who she later identified as Tony Bourque and Thomas Emery.[1] McGay related Bourque stopped the truck and both men went inside a convenience store, but she was too afraid to escape. The men re-entered the truck; and as Bourque drove "down a dark road," the men beat her and called her "Nigger Bitch." After stopping in a rural field, the men beat, kicked, and cursed her. Bourque put on a condom and had vaginal and anal sex with McGay, while he beat her and called her a "whore." McGay stated the rape was painful and caused her rectum to bleed. Although she attempted initially to "fight," McGay testified, Bourque forced himself inside of her. Eventually she stopped "fighting" as she grew weak from the continual beatings administered by her abductors. McGay is five-foot three-inches tall and weighed one hundred and five pounds at the time of the offense.
When Emery attempted to "take his turn," McGay related he was physically unable to do so. The men continued to beat and kick McGay. She "played dead," but she heard defendant say to his accomplice "she ain't dead, she's faking." The men proceeded to kick her again and again. Finally, the men left in the truck. Naked, bleeding, and bruised, McGay ran to a nearby house. When McGay was abducted, she was wearing earrings and false hair braids.
Detective Ipson arrived at the crime scene first. He described it as an "open farming field off a private driveway leading to a pasture." He discovered blood stains on the grass, an earring, a hair weave (braid), two used condoms and their packages. He testified "some distance" existed between the location of the condoms and the site where the blood stains and hair weave were found. The Detective also testified when he visited with McGay, she was wrapped in a sheet and looked beaten. Her mouth was swollen and she could barely speak.
McGay was taken to a nearby hospital. The doctor observed she was bleeding from the mouth, nose, and hands. He noted she had forehead bruises, cuts on her lip, fingers and legs, and a bruised shoulder. The medical report indicates McGay's rings were crushed into her fingers and were removed with pliers. McGay testified it appeared the men ran over her with the truck because she noticed tire marks on her hand.
Detective Kristen Bayard collected evidence at the crime scene. She collected two used condoms, blood splatters, gold earrings, hair braids, an opened condom package, loose change, and an empty condom box. Bayard sent those items, McGay's rape kit, and blood samples from the defendant and his accomplice (Emery) for lab testing. The crime lab identified semen on one condom. Further testing *1142 revealed the DNA in the semen was consistent with Bourque's DNA, but was inconsistent with Emery's.
McGay testified she did not consent to anything the men did to her. Although admitting she was convicted in 1995 for prostitution solicitation, McGay repeatedly denied on cross-examination that she was engaged in prostitution when the men abducted her. McGay stated she committed prostitution only one time and the act landed her in jail.[2]
The second victim, Angela Marcelin, testified while she was walking to a nearby Cracker Barrell, two men in a truck offered her a ride. She accepted the ride, telling men she was headed to her hotel room but needed to stop to buy cigarettes. The men stated they intended to stop for gas and she offered to give them a few dollars for gas after she purchased the cigarettes. Defendant drove to the Fast Lane Store and pumped the gas while the other man "got [her] cigarettes."[3] Marcelin noticed, after leaving the store, the men headed in a direction opposite the hotel. She asked the men where they were going, and Bourque replied, "the place." After arriving at the abandoned location, the men began cursing her and saying they "had them a fine ass nigger." Emery directed her to pull down her panties and lean face down across the seat of the truck with her feet on the ground. After placing a condom on his penis, Emery tried to have sex with her, but could not get an erection. As the victim struggled, Emery grew angry, beat her, and forced his penis in her mouth. Soon after, Bourque "took his turn." Bourque slammed her face against the truck door. Penetrating her from the back, he continually slapped her buttocks saying, "we got us a fine ass nigger here. We done fried a couple of niggers before; so we going to see how this nigger here fry to." As Bourque inserted his penis into her rectum, Marcelin testified she felt something "wiggling" inside her. She discovered Emery had inserted a live catfish inside her vagina. McGay related she grabbed the fish's fins to pull it out of her.
The men picked Marcelin up, slammed her to the ground, and kicked her. At one point, they placed Marcelin on her knees with her hands behind her back and threatened to retrieve a gun and shoot her in the head. She was forced to bend over and touch her toes, while they beat her with a frozen ice pack. The men also took turns whipping Marcelin with a fishing rod and tortured her with a four prong tire iron taken from the truck. Marcelin stated they inserted the largest part of the tool in her rectum, then stuck it in her mouth. As she begged the men not to hurt her anymore, the men said it was time to "fry this nigger" and repeatedly attempted to set her pubic hairs on fire, but the wind kept blowing out the flame. This episode was followed by the men spitting and urinating on her. The men then forced Marcelin to lay face down on the ground while they stomped her T-shirt clad back at the same time. Finally, they fled the scene, and Marcelin ran to the same house that McGay ran to just a few *1143 months earlier. The police arrived and immediately sought medical treatment for Marcelin. The medical records indicate she was throwing up blood, whip marks covered her body and debris was found in her vagina.
Detective Bayard testified she recovered from the same field where McGay had been raped earlier: an open condom package, a used condom, and the catfish. The police later discovered three fishing poles and a tire iron tool in the back of Bourque's truck and retrieved another fishing pole and a pair of boots from Emery's house. Detective Babin testified the boot print impressions on Marcelin's T-shirt matched the boots recovered from Emery's house; and it showed patterns on the front consistent with the fishing rod the victim alleges her attackers used to whip her. The lab report revealed blood was found on the tire tool, boots, T-shirt and the victim's vaginal swabs. The semen found in the used condom was not consistent with Bourque's DNA, but it was consistent with Emery's.
Despite the overwhelming evidence establishing that the victims were severely beaten and tortured, Bourque continues to insist they consented to sexual intercourse with him. He argues the fact that he and Emery used condoms substantiates his claim that the acts of sexual intercourse were acts of prostitution, not rape. Bourque also attacks the victims' credibility alleging they engaged in prior acts of prostitution and used drugs. He also argues they lied to the police when questioned.
According to State v. Sutton, 436 So.2d 471 (La.1983), facts established by the direct evidence and inferred from the circumstances must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Aggravated rape is defined as 1) a rape 2) where anal or vaginal intercourse occurs 3) without ones lawful consent 4) while committed when the victim resisted the act to the utmost 5) but whose resistance is overcome by force. La.R.S. 14:42(A)(1).
Both victims testified they never consented to sexual intercourse with Bourque. They adamantly deny prostituting at the time of the incident. Both women strongly declared they were raped. The record reflects Bourque's DNA was present on a condom. Medical reports show both victims suffered from vaginal scarring and bleeding. Both women testified they struggled to get away, but were overcome with force. Considering the record in the light most favorable to the prosecution, there is more than enough evidence contained in it to support the jury's conclusion that Tony Bourque committed the aggravated rapes of Sheila McGay and Angela Marcelin.

DETECTIVE GALLIEN'S TESTIMONY
The State moved in limine, at the close of its case in chief, to exclude certain portions of Detective Gallien's testimony. The trial court, after careful consideration, concluded parts of Gallien's expected testimony were inadmissible. Specifically, the defense was precluded from asking Gallien whether the victims were acting as prostitutes at the time of the alleged rape and whether Marcelin initially stated during the investigation that she was abducted by the men. On appeal, the defense argues the testimony it desired to elicit from Gallien weighed against the victims' credibility.
A trial court's ruling regarding admissibility of evidence should not be disturbed on review, absent manifest error. State v. Robertson, 98-883 (La.App. 3 Cir. 12/9/98); 723 So.2d 500. It is well settled that a lay witness may not testify to matters outside his or her personal knowledge. La.Code of Evid. art. 602. A police officer may testify as to matters within his personal knowledge acquired through experience without first qualifying as an expert. State v. Gibson, 97-108 (La.App. 3 Cir. *1144 4/30/97); 693 So.2d 286. However, Detective Gallien did not have personal knowledge that the victims were engaged in acts of prostitution at the time the incidents in question occurred. His "idea" that the victims were engaged in prostitution constituted nothing more than mere speculation. The trial court properly excluded this testimony. Further, Marcelin admitted during cross-examination she did not tell the truth when she told the police initially that she was abducted. The court found any attempt by the defense to revisit this line of questioning on rebuttal was improper. We cannot say the court abused its discretion in so limiting the officer's testimony.

EXCESSIVE SENTENCE
By this assignment, Bourque contends the consecutive life sentences he has been ordered to serve is excessive. We note defendant failed, in writing or orally, to motion the court to reconsider sentences it imposed. Therefore, he is barred from raising this issue for the first time on appeal. See State v. Francis, 99-208 (La. App. 3 Cir. 10/06/99); 748 So.2d 484; State v. Welch, 98-638 (La.App. 1 Cir. 4/1/99); 744 So.2d 64; State v. James, 95-962 (La. App. 3 Cir. 2/14/96); 670 So.2d 461; State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96); 694 So.2d 351.

DECREE
For the foregoing reasons, Bourque's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] McGay identified Bourque and Thomas Emery from photo line-ups.
[2] On Cross-examination McGay also revealed she was convicted of disturbing the peace in 1996; and ordered by the trial judge in connection with her 1995 prostitution conviction to stay away from the "Four Corners" area. She testified when the men abducted her, she was not in this area. But Detective Ipson testified McGay told him the men abducted her "at gunpoint near Cameron and University Streets." He identified this area as the "Four Corners" area. Although McGay continued to deny that she was in the "Four Corners" area at the time of the abduction, she remembered telling the officer she thought the men had a gun but she forgot to mention this fact during her direct examination.
[3] Officer McCullan Gallien, who later interviewed Marcelin, testified he overhead her tell another police officer that she went in the convenience store with the men. But Gallien acknowledged when he reviewed the surveillance tape maintained by the store, he did not see the victim. He admitted when the victim viewed the tape to identify her attackers, she started crying when she saw defendant.