STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

KA 22-227

STATE OF LOUISIANA

VERSUS

SCOT MARTIN KIDD

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 1495-21
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**********

**GARY J. ORTEGO**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Jonathan W. Perry, and Gary J. Ortego, Judges.

**AFFIRMED; AND REMANDED FOR CORRECTION OF
SENTENCING MINUTES.**

**Bruce Gerard Whittaker**
**Capitol Defense Project**
**829 Baronne Street**
**New Orleans, LA 70113**
**(504) 595-8965**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Scot Martin Kidd**

**Stephen C. Dwight**
**Fourteenth JDC District Attorney**
**P. O. Box 3206**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**David S. Pipes**
**Fourteenth JDC Assistant D.A.**
**901 Lakeshore Drive**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Scot Martin Kidd**
**Louisiana State Prison**
**MPWY/Wal-3**
**Angola, La 70712**

**ORTEGO, Judge.**

Defendant, Scot Martin Kidd, appeals his conviction of two counts of first-degree murder, in violation of La. R.S. 14:30.

## FACTS AND PROCEDURAL HISTORY

On January 7, 2021, a Calcasieu Parish Grand Jury indicted Defendant, Scot Martin Kidd, on two counts of first-degree murder, in violation of La.R.S. 14:30. Then the State filed a "Notice of non-Capital Election" on March 2, 2021, advising that the State would not seek capital punishment, in these indictments.

Defendant sought to suppress a pretrial statement he made to police, alleging a *Miranda* violation. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 602 (1996). The State filed a motion to have the statement ruled admissible. The trial court heard the motions on October 14, 2021, and denied Defendant's motion, while granting the State's motion.

On October 18 and 19, 2021, the parties selected the trial jury, which began hearing evidence on October 20, 2021. On October 22, 2021, upon completion of the trial, and deliberation by the jury, Defendant was found guilty as charged on both counts of first-degree murder. Defendant subsequently filed a motion for new trial, which the trial court heard and denied on December 15, 2021. On December 15, 2021, the trial court sentenced Defendant to two life terms, to be served consecutively.

Defendant now seeks review, assigning five errors through counsel and six errors pro se, with most of the Defendant's pro se assignments mirroring the counsel-filed assignments.

For the following reasons, we affirm Defendant's convictions and sentences.

1

## ERRORS PATENT

In accordance with Louisiana Code of Criminal Procedure art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we conclude that there are no errors patent. However, this court finds that the minutes of the trial court's sentencing requires correction, as the court minutes do not reflect that Defendant's life sentences, as imposed by the trial court, at hard labor, were imposed without the benefit of parole, probation, or suspension of sentence, as indicated in the sentencing transcript. When there is a conflict between the minutes and the transcript, the transcript prevails. *State v. Wommack*, 00-137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Accordingly, we remand this case to the trial court, and order the trial court to correct the sentencing minutes to reflect that the trial court imposed the Defendant's sentences to be served at hard labor, without the benefit of parole, probation, or suspension of sentence.

## ANALYSIS

## ASSIGNMENT OF ERROR NUMBER 1 & PRO SE ASSIGNMENT

## NUMBER 1:

In his first assignment of error, Defendant argues that the trial court erred by denying his pre-trial motion to suppress. In said motion Defendant argued that police improperly continued to question him after he requested assistance of counsel, thus violating the prophylactic rules of *Miranda,* and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880 (1981). See also *State v. Payne*, 01-3196 (La. 12/4/02), 833 So.2d 927. Specifically, Defendant argues that during his questioning by police, that his statement, "I'm going to have to get an attorney," was a clear and unambiguous invocation of his right to counsel. The record further shows that Defendant, later in his statement made the declaration, "Dude, I'm done. I want to get an attorney, man"

2

which was immediately recognized by police as an invocation of Defendant's right to counsel, and after which the police ceased the interrogation of Defendant on that date.

Thus, in the context of the entire statement given to the police, it is clear that Defendant's first reference to an attorney was not a request to end the interview and consult with counsel, but rather, as testified to by Detective Casey LaFargue, at the hearing on the Motion to Suppress, that this first statement was Defendant verbalizing his thought process about actions he would need to take in the future.

In denying Defendant's motion to suppress, the trial court ruled that Defendant did not make an unambiguous request for counsel.

The Louisiana Supreme Court has ruled and explained:

> *Miranda v Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to the suspect before questioning begins. *Id.*, 384 U.S. at 469-473, 86 S.Ct. at 1625-1627. When an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). In the present case, while demonstrating some confusion regarding his rights, Defendant nonetheless clearly and unambiguously invoked his right to counsel at which point the detective should have ceased further inquiry.

*State v. Lagos*, 18-1724, p. 1 (La. 1/28/19), 262 So.3d 277, 278 (per curiam) (alteration in original).

Additionally, as this court has observed, *Miranda* is not triggered by every reference to defense counsel:

> In *State v. Kelly*, 95-1663, p. 6 (La.App. 3 Cir. 5/8/96), 677 So.2d 495, 499, the Defendant stated, "After all this here, do I still get a lawyer." This court found that the statement was not a request for the immediate presence of an attorney. In *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the Supreme Court held that an equivocal or ambiguous statement, such as "maybe I should talk

3

to a lawyer," was insufficient to constitute an invocation of the right to counsel. In *State v. Boudreaux*, 597 So.2d 1235 (La.App. 3 Cir.), *writ denied*, 609 So.2d 223 (La.1992), the state argued the Defendant said, "Since you are trying to stick it all on me, I might as well get an attorney." Defense counsel argued the Defendant stated, "I might have to get an attorney." This court concluded that based on these comments there was no indication that the Defendant requested the immediate presence of an attorney or that he desired the interview to cease. In Soffar *v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002), the United States Fifth Circuit Court of Appeals, sitting *en banc*, analyzed several cases dealing with the issue of what is required for an unequivocal invocation of the right to counsel; it concluded that Soffar did not unambiguously invoke his right to counsel when he asked "whether he should get an attorney; how he could get one; and how long it would take to have an attorney appointed."

*State v. Poullard*, 03-940, pp. 7-8 (La.App. 3 Cir. 12/31/03), 863 So.2d 702, 710-11, *writ denied*, 04-908 (La. 3/18/05), 896 So.2d 995.

Comparing the remarks listed in *Poullard* to the phrase at issue herein, "I'm going to have to get an attorney", we find same was not a clear and unambiguous invocation of his right to counsel, unlike his later declaration, "Dude, I'm done. I want to get an attorney, man." Therefore, we find that his first statement implies future action, while his second statement denotes Defendant's immediate action or a desire for immediate action.

For these reasons, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 2 & PRO SE ASSIGNMENT OF ERROR NUMBER 2:

In his second assignment of error, Defendant argues the trial court erred by failing to charge the jury with the law of self-defense, pursuant to La.Code Crim.P. art. 802, as that facet of law was applicable to the case. However, and as the State argues, Louisiana Code of Criminal Procedure art. 801(C) precludes Defendant from raising this issue, as he did not object to the jury instructions at trial.

4

Louisiana Code of Criminal Procedure art. 801(C) states, in pertinent part:

> A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection.

Defendant argues there is an exception to the rule of Louisiana Code of Civil Procedure art. 801(C), pursuant to *State v. Williamson*, 389 So.2d 1328 (La.1980), in which a trial court incorrectly instructed a jury regarding the elements of first and second degree murder. That court observed that the error went to "the very definition of the crime of which Defendant was in fact convicted." *Id*. at 1331. Defendant contends that his situation is analogous, as a self-defense claim in a homicide case requires the State to prove that a Defendant did not act in self-defense. Defendant argues that without a proper instruction, the jury was not informed of this requirement.

Regarding *Williamson*, and this issue, the State raises three points. First, it maintains that the instruction here did not misrepresent the definitions of the crimes at issue. The State notes that a self-defense instruction may not have even been available to Defendant, as the "person who . . . brings on a difficulty" cannot claim self-defense as a defense, pursuant to La.R.S. 14:21. This latter point was not explored during trial, likely due to the lack of a request for a self-defense instruction by Defendant.

The State's second point is that in *Williamson,* that court acted because the record before it provided sufficient grounds for the court to conduct a full analysis, whereas the record in the present case is not sufficient for a proper analysis of the assignment of error. The record simply is not clear as to why trial counsel neither requested a self-defense instruction, nor objected to the instructions as given.

5

Shortly before trial, Defendant filed a notice that he would assert only a defense of voluntary intoxication, and not as to self-defense. Also, in defense counsel's opening, he suggested the State would not be able to prove the elements of the crime, and it was only later when Defendant took the stand that Defendant first testified that he acted in self-defense. In his closing, defense counsel very briefly referred to self-defense but, as already noted, took no action to request that self-defense instruction be given as part of the jury instructions. In its closing, the State alluded to Defendant's several competing defense theories, including Defendant's denials to police that he was even at the scene of the crime. The State argued that some of defense counsel's examinations of State witnesses appeared to question whether Defendant was even present at the victims' residence. Defendant's mixed defense theories at trial suggest that Defendant may have "surprised" or "ambushed" his own trial counsel by giving testimony that may have presented a self-defense scenario. We find that the lack of clarity on this point, along with Defendant's mixed defense theories, renders the record insufficient to invoke and carry the *Williamson* exception.

In its final point under this assignment of error, the State notes that subsequent jurisprudence has called *Williamson* into question or has at least limited its reach. The State cites another supreme court case:

> In *State v. Williamson*, 389 So.2d 1328 (La.1980), we allowed review of an erroneous jury instruction despite the Defendant's failure to object at trial. We express no opinion on whether this court will again grant review under the unique facts of *Williamson*, but leave that as an open question. However, *Williamson* should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. This court has not created or recognized a plain error rule of general application.

*State v. Thomas*, 427 So.2d 428, 435 (La.1982); See also *State v. Hongo*, 96-2060 (La. 12/2/97), 706 So.2d 419.

6

We agree and find that in light of Defendant's failure to request a self-defense instruction, or object to the jury instructions as given by the trial court, that this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 3 & PRO SE ASSIGNMENT OF ERROR NUMBER 3:

In his third assignment of error, Defendant argues his trial counsel was ineffective for failing to request that the jury be instructed regarding self-defense. As the parties correctly observe, ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), which sets forth a two-step test: (1) counsel's performance must be shown to have been deficient, and (2) said deficient performance must have prejudiced the defense. *See also State v. Washington*, 491 So.2d 1337 (La.1986).

The State argues that the facts of this case record does not warrant reversal for ineffective counsel, and states in its brief:

> As noted by the Defendant, a claim of ineffective assistance of counsel is generally more appropriately raised in an application for post -conviction relief, as the application allows for the opportunity for a full evidentiary hearing to explore the various issues raised by the application. State v. Christien, 09-890 (La. App. 3d [sic] Cir. 02/03/10); 29 So. 3d 696. Such should be the result here.

As observed in the previous assignment of error, the record is unclear regarding both the defense's trial strategy and theory of the case. A review of this record reflects Defendant's several competing defense theories, including his denial to police that Defendant was even at the scene of the crime, shows there is at least the possibility that Defendant's testimony of self-defense surprised even his own trial counsel. As such, in a situation as this, it appears from the record that the defense counsel's performance was not deficient pursuant to *Strickland*.

7

The pro se brief reveals another layer of complexity, as it refers to trial counsel's assertion at the hearing on the motion for new trial, that Defendant perhaps should have entered a plea of not guilty and not guilty by reason of insanity due to Defendant's alleged prior brain injury and post-traumatic stress disorder. Also, defense counsel suggested his trial preparation may have been affected by circumstances that stemmed from hurricane damage to his office and residence.

Sorting out these competing, and possible conflicting defense theories or strategies will necessitate information regarding communications between Defendant and his trial counsel. Since attorney and client communications are necessarily outside this record, we find that this issue should properly be relegated to the post-conviction relief process, wherein the parties will be able to further develop the record. *State v. Miller*, 99-192 (La. 9/6/00), 776 So.2d 396, *cert. denied*, 531 U.S. 1194, 121 S. Ct. 1196 (2001).

For these reasons, we find this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER 4 & PRO SE ASSIGNMENT OF ERROR NUMBER 4:

In his fourth assignment of error, Defendant argues the trial court erred by denying his motion for new trial. He contends that evidence regarding jewelry, that allegedly belonged to the victims, was not disclosed by the State, "thus lulling [him] into a misapprehension about the strength of the State's case". Defendant made a similar contention in his motion for new trial, and Defendant also makes this argument in his pro se brief.

By law, a trial court's ruling on a motion for new trial is reviewed for abuse of discretion. *State v. King*, 15-1283 (La. 9/18/17), 232 So.3d 1207. The brief of the attorney and the pro se brief properly state a key standard for discovery violations, and as to the issue of whether the alleged violations lulled Defendant into

8

a false impression of the strength of the State's case, is the case of *State v. Davis*, 399 So.2d 1168 (La.1981).

The defense attorney's and Defendant's pro se briefs allege that evidence regarding some items of jewelry was not provided in discovery, with the pro se brief also raising the matter of the testimony related to a quantity of cash. These potential discovery issues came to light when Defendant took the stand to testify in his own defense. When the State cross-examined Defendant, it asked a single question about cash that the male victim may have had in a front pocket. Defendant denied taking any money, and the State asked why no money was found in the victim's pocket, and the defense counsel failed to object to this line of questioning by the State.

Later, the State questioned Defendant as to whether he stole jewelry that belonged to the female victim. At that point, defense counsel objected, arguing the specific items of jewelry at issue had not been identified during the State's case-in-chief. The parties and the court then engaged in a bench conference that was focused entirely on the jewelry. Ultimately, the trial court allowed questioning to continue, reasoning that Defendant was subject to full cross-examination, as he had chosen to take the witness stand.

After Defendant rested, defense counsel renewed his objection to questioning regarding the jewelry. The court reiterated "that by taking the stand [Defendant] opened himself up to be questioned about whether he stole jewelry or not."

On rebuttal, and pursuant to Defendant's testimony, the subject of the cash and the jewelry arose again. The State called the victims' son, Dwayne O'Brien, who testified that a pendant and bracelet at issue had belonged to his mother. Also, he testified that the night before the victims were found dead, the victims were at Dwayne's house, and when the victims left, the male victim had $750 in his pocket. Dwayne testified that when he saw his father's dead body the next morning, it was

in the same clothes that Dwayne had seen on his father the prior evening, and his father's cash was never recovered.

After trial, Defendant filed a motion for new trial. He challenged the testimony regarding the jewelry, alleging lack of discovery. He included similar arguments regarding the apparently missing cash. At the hearing on the motion, Defendant's counsel argued that the cash, approximately $750, was not mentioned in discovery. He made a similar allegation regarding the jewelry. The State responded that it only learned about the cash when Defendant was on the stand at trial. Further, the State pointed out that details regarding the jewelry were part of discovery. The record reflects that the State's third supplemental response to discovery is on a CD and is included with the record. The police report included therein includes several references to items of jewelry that Defendant allegedly attempted to sell or gave to his ex-girlfriend. The report also included information indicating the jewelry belonged to the female victim.

Regarding the cash, the trial court noted the State's assertions that it did not realize that the cash was significant until Defendant testified, and that the State did provide information regarding the jewelry in discovery. Addressing the cash issue, the trial court observed: "those are the kind of things that happen in real-time during trials." In reference to the jewelry, the trial court noted the State's point that it provided all pertinent information in discovery. Additionally, and as already discussed, the record demonstrates that the State provided all pertinent information about the jewelry in discovery. Thus, we find that there was no discovery violation regarding the jewelry.

As for evidence related to the cash, Defendant suggests that it might have been better for the trial court to grant a recess so that Defendant could assess evidence that was allegedly new to the Defendant. However, as discussed earlier, Defendant

failed to raise a contemporaneous objection when the State first questioned Defendant about the cash. Courts have viewed the failure to contemporaneously object to a discovery violation or request a remedy to such a violation as a waiver of the objection. *State v. Bonanno*, 373 So.2d 1284 (La.1979); *State v. Stracener*, 94-998 (La.App. 3 Cir. 3/1/95), 651 So.2d 463, *writ denied*, 97-696 (La. 11/7/97), 703 So.2d 1261; Louisiana Code of Criminal Procedure art. 841.

Additionally, we find that since the discovery included all pertinent information about the jewelry, and Defendant chose to take the stand, it is doubtful and unknown that his knowledge of the cash-related evidence would have deterred Defendant from testifying. Further, Defendant admitted to taking other items, such as firearms from the victims' residence, when he left after the shootings. Defendant knew of the firearms and other related evidence, and thus should have known from the discovery as to the evidence of the jewelry and other related items allegedly taken from the victims and their residence. Additionally, Defendant and his trial counsel should have known of the accompanying implications of theft or robbery that could arise from such evidence when Defendant took the stand at trial. Therefore, we find that Defendant has failed to demonstrate that he was "lulled" into a misapprehension of the strength of the State's case, when he chose to testify; and, thus we find that the trial court did not abuse its discretion in denial of Defendant's motion for a new trial.

For the reasons discussed, these assignments, both attorney-filed and pro se, lack merit.

## ASSIGNMENT OF ERROR NUMBER 5 & PRO SE ASSIGNMENT OF ERROR NUMBER 5:

In his fifth assignment of error, Defendant claims, in the attorney-filed, and pro se briefs, that the consecutive sentence of his two mandatory life sentences

11

renders them excessive. Defendant does not contest the underlying mandatory life terms at hard labor required by La.R.S. 14:30, as Defendant merely made an oral general objection to the sentences. Defendant's Motion to Reconsider Sentence merely stated a general claim of excessiveness, thus Defendant raises this issue that the consecutive sentence of his two mandatory life sentences renders them excessive for the first time in this appeal. We therefore conclude that Defendant is precluded from raising the issue of the consecutive nature of the sentences for the first time on appeal. Louisiana Code of Criminal Procedure art. 881.1(B); *State v. Bourque,* 99-1625, (La.App. 3 Cir. 6/21/00), 762 So.2d 1139, *writ denied,* 00-2234 (La. 6/1/01); 793 So.2d 181; *State v. Escobar Rivera,* 11-496, (La.App. 5 Cir. 1/24/12); 90 So.3d 1, *writ denied;* 12-409 (La. 5/25/12), 90 So.3d 411.

Additionally, and as stated by this court previously as to this exact issue, "Since [the Defendant] has but one life to serve, it is difficult to see that a consecutive sentence would penalize him excessively." *State v. Dennard*, 482 So.2d 1067, 1068 (La.App. 3 Cir. 1986).

Therefore, we find that this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER 6:

In Defendant's final pro se assignment of error, Defendant complains that the trial court erred by ruling that the parties could not discuss "compromise verdicts" or jury nullification during jury selection. The record contains the following relevant colloquy, to-wit:

**THE COURT:**

By the way, I'm going to go ahead and just going to tell y'all. I'm going to -- based on the last trial that I had, I'm going to make I guess a ruling, I guess a preemptive statement I guess [sic] because that last trial I had I guess turned into something that was something that kind of went off the rails a little bit and that's the first time that I've had that happen and I don't want it to be repeated, which is that apparently -- and it had to do with a

12

case that involved something that happened a few weeks earlier apparently with Judge Wyatt in a trial that he had and the Third Circuit not-for-publication rulings that were made with regard to responsive verdicts or whatever, but let me just say this. We are not going to talk about compromise verdicts in jury selection. Now, you can talk about responsive verdicts, you can talk about, you know, the responsive verdicts the law allows you to consider. You could talk about -- because that *State v. Porter* case that was discussed, that dealt with a whole set of issues that doesn't, you know, -- there's a difference between the Supreme Court recognizing practicality on appeal because in that particular case the trial court took away some responsive verdicts, you know, and the Supreme Court recognized, look, jurors, even in the face of overwhelming evidence, can come back with responsive verdicts and that's just something that they can do. Everybody recognizes that jurors -- we don't control what they do. In that jury deliberation room, they can do things and we don't have any control. That's their -- that's what they can do. You know, we don't always -- sometimes we scratch our heads and wonder why they did what they did, but that's what they can do, but there's a difference between understand[ing] that a jury -- that jurors have a right -- you know, that jurors do things and have a right to do things when they're in the jury deliberation room that we have no control over and instructing them and telling them that this is the law that they can do things, I mean there's a big difference is that [sic] and I think that, you know, looking at the appeal, you know, looking at something in that context versus telling them -- giving them instructions because I think telling them that they have a right to basically ignore the law in jury selection I think is just inappropriate and I think that's kind of where that discussion goes in jury selection and I don't think it's appropriate and so were [sic] are not going to go there.

You can talk all you want about responsive verdicts, but we're not going to talk about, you know, basically jury nullification and how, you know, they have a right -- even if they think all elements are proven that they have a right to even, you know, come back with a responsive verdict anyway. I don't think that's appropriate for jury selection purposes and discussions and so I'm not going to allow that to take place. So, I just want to make sure everybody realizes that up front, so we don't even get there.

**MR. CASANAVE:**

Is that an order of the Court, Your Honor?

**THE COURT:**

That is an order of the Court.

13

**MR. CASANAVE:**

I object to the Court's ruling.

**THE COURT:**

Let the record so reflect. And I just want to make it clear. You know, I'm not saying that you can't -- you know, you can talk about responsive verdicts, but we're just not going to talk about, you know -- there was an argument -- well, I guess I'm just going to clarify. There's an argument that the *Porter* case stands for that proposition because that's what was argued, and the *Porter* case doesn't stand for the proposition that you tell the jurors -- that you can tell jurors that in jury selection. That *Porter* case stands for the proposition that the appellate courts recognize that jurors do that, and they can do that, but not that you tell them that ahead of time, you know, so -- but anyway, which I think there's a big difference in there, but I'll let your objection be noted for the record.

Thus, the trial court clarified that it would properly instruct the jury about responsive verdicts, and that the parties would be able to argue regarding responsive verdicts during closing arguments. The subject of responsive verdicts was discussed during jury selection, and therefore, the trial court then properly instructed the jury regarding responsive verdicts. During deliberations, the jury asked for clarification of the definitions of first-degree and second-degree murder, and manslaughter, and in response to same, the parties agreed that the trial court would provide the jury a copy of the trial court's instructions.

Further, the trial court in its colloquy referenced the case of *State v. Porter*, 93-1106, p. 11 (La. 7/5/94), 639 So.2d 1137, 1143-44, which states in pertinent part:

In the determination of whether to exclude the statutorily authorized responsive verdict, the issue was not whether the trial court believed the verdict of simple rape was the most accurate characterization of the conduct under the evidence, but whether the evidence would have supported the jury's verdict of simple rape under the statute defining that offense. If it would, the Defendant under the legislative scheme had a right to have the jury consider returning the lesser verdict which is specifically included under Article 814.

14

As the trial court stated, the *Porter* court mentioned jury nullification in a footnote, but as the language above shows, the case was focused on statutory responsive verdicts.

Additionally, in the case of *State v. Campbell*, 21-437 (La.App. 3 Cir. 7/13/21) (unpublished opinion) (footnote omitted), this court ruled and stated:

> **WRIT GRANTED AND MADE PEREMPTORY, IN PART; WRIT DENIED, IN PART:** The defense filed a writ application with this court seeking supervisory review of the trial court's July 12, 2021, ruling limiting the scope of voir dire concerning defense counsel's discussion of responsive verdicts. To the extent the district court prohibited Defendant's discussion both of lesser included offenses and of compromise verdicts as set forth under *State v. Porter*, 639 So.2d 1137 (La.1994), Defendant's writ application is granted. Defendant is allowed to discuss with the jury venire the lesser included offenses in this case as well as the use of those lesser included offenses to reach a compromise verdict. Defendant is additionally allowed to ask questions to ascertain the jury venire's understanding thereof.
>
> To the extent defense counsel, in brief, seeks to extend the scope of voir dire to include questions regarding the venire's attitude toward returning a responsive verdict even though the jurors have found the charged offense proven beyond a reasonable doubt, Defendant's writ application is denied. *See State v. Holmes*, 06-2988 (La.12/2/08), 5 So.3d 42, *cert. denied*, 558 U.S. 932, 130 S.Ct. 70 (2009); *see also, State v. Tilley*, 99-569 (La. 7/6/00), 767 So.2d 6, *cert. denied*, 532 U.S. 959, 121 S.Ct. 1488 (2001).
>
> The case is remanded to the trial court for actions consistent with this ruling.

As this court states in its finding that *Campbell's* ruling is supported by both logic and practicality, as it is not feasible to state a legal requirement that juries must be instructed that they can ignore the law or the evidence before them. This court further notes that in *State v. Chatman*, 43,184, p. 14 (La.App. 2 Cir. 4/30/08), 981 So.2d 260, 271, the second circuit ruled that Defendants do not have a right to a jury instruction on outright nullification, i.e., "to disregard uncontradicted evidence and instructions by the trial court."

Considering the forgoing, this court finds that this assignment lacks merit.

15

## **DECREE**

For the foregoing reasons, we affirm the Defendant's convictions and sentences. Additionally, we remand this case to the trial court to correct the sentencing minutes to reflect that the trial court imposed Defendant's two mandatory life sentences to be served at hard labor, without the benefit of parole, probation, or suspension of sentence, with proper notice to Defendant of this correction of the sentencing minutes, within thirty (30) days from this judgment.

**AFFIRMED; AND REMANDED FOR CORRECTION OF SENTENCING MINUTES.**