# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-0167

**STATE OF LOUISIANA**

**VERSUS**

**JAMES "T. K." ALEXANDER**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 00507
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN D. SAUNDERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, John D. Saunders, and Billy Howard Ezell, Judges.

**CONVICTION AFFIRMED; SENTENCE VACATED; AND CASE REMANDED FOR RESENTENCING.**

**Hon. J. Phillip Haney**
**District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**Counsel for: Plaintiff/Appellee**
**State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**Counsel for: Defendant/Appellant**
**James "T.K." Alexander**

**SAUNDERS, J.,**

The Defendant, James "T.K." Alexander, was charged by bill of information on September 25, 2001, with public bribery, a violation of La.R.S. 14:118. The Defendant entered a plea of not guilty on October 3, 2001. Trial by jury commenced on May 14, 2002. On May 17, 2002, the jury returned a verdict of guilty of public bribery. On October 10, 2002, the Defendant was sentenced to three years at hard labor, all but one year suspended, with credit for time served, and three years supervised probation. A Motion to Reconsider Sentence was filed on October 15, 2002, and denied on October 16, 2002. A Motion for Appeal was filed on October 22, 2002.

**FACTS:**

Louis Hutchinson conducted a presentation at a Jeanerette City Council meeting in April of 1999 regarding his employer, PSG, taking over the operations of the city water plant. Whitney Vernon testified that after the council meeting, he was approached by Michael Cormier, the City's financial advisor. Cormier advised Vernon that Hutchinson would like to speak to Vernon and that Hutchinson would like to offer Vernon a job in exchange for a favorable vote on the water plant contract. The Defendant, the Mayor of Jeanerette, advised Vernon that Hutchinson wanted to meet with Vernon at Vernon's place of employment to discuss the contract. Vernon then contacted the Iberia Parish Sheriff's Department on April 26, 1999. Vernon met with Hutchinson and another employee of PSG, Monty Boynton, at Vernon's place of employment on April 29, 1999. The meeting was arranged by the Defendant. During the meeting, Hutchinson offered Vernon a job at the water plant in exchange for a favorable vote on the contract. Vernon called the Defendant after the meeting with Hutchinson, advising the Defendant that he was concerned because Hutchinson

had brought Boynton to the meeting. The Defendant told Vernon if Hutchinson said he would get a job it was true. The Defendant then arranged for Hutchinson to contact Vernon. Hutchinson called Vernon on May 4, 1999, and from that conversation Vernon got the impression he would get a job at the water plant if he voted in favor of the PSG contract. On May 6, 1999, Vernon had a conversation with the Defendant wherein the Defendant indicated Hutchinson would go through with his deal with Vernon and that Hutchinson was going to get jobs for other people, including the Defendant. The Defendant then scheduled a meeting with Vernon for that evening, but the Defendant canceled the meeting. The Defendant met Vernon the following day at Vernon's place of employment, at which time the Defendant informed Vernon he was taking the contract proposal off the agenda.

Kevin Duffy, vice president for compliance and assistant general counsel for U.S. Filter, formerly Aqua Alliance, Inc., the parent company of PSG, conducted an investigation into an alleged bribery in Jeanerette. The investigation was prompted by Monte Boynton reporting Hutchinson's meeting with Vernon to the company's compliance hotline. Based on the investigation, Hutchinson was suspended. On May 7, 1999, Bill Nelson, general counsel for PSG, called and faxed the Defendant informing the Defendant there was an ongoing investigation regarding a PSG employee and it was suggested that the vote on the PSG contract be postponed. Once the investigation was completed, Hutchinson was fired and the PSG contract was withdrawn.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two errors patent, both concerning the Defendant's sentence.

2

As a condition of probation, the Defendant was ordered to pay a monthly supervision fee and to make restitution to the city of Jeanerette for the expenses incurred as a result of the crime, in an amount to be determined by the Defendant and his probation officer. The judge stated he would hold a hearing and determine the amount of restitution only if the Defendant and his probation officer did not agree on the amount to be paid.

The first error patent concerns the failure of the trial judge to establish the amount of restitution to be paid by the Defendant. This resulted in an illegal sentence. In *State v. Dauzat*, 590 So.2d 768, 775 (La.App. 3 Cir. 1991), *writ denied*, 598 So.2d 355 (La.1992), this court stated:

> When a sentencing judge orders a defendant to make restitution to the victim, both La.C.Cr.P. arts. 895(A)(7) and 895.1 require the court, and not the probation officer, to determine the amount of restitution. Because the court failed to determine the amount of restitution owed as a special condition of probation, the defendant's sentence is illegal. *State v. Hardy*, 432 So.2d 865 (La.1983). *State v. Rogers*, 517 So.2d 428 (La.App. 1st Cir.1987).
>
> This error cannot be corrected by an appellate court. Therefore, defendant's sentence must be reversed with the case to be remanded for resentencing. Upon resentencing, the judge must determine the amount of money taken by the defendant which was not covered by insurance. Restitution for this loss may be ordered pursuant to either La.C.Cr.P. arts. 895 or 895.1.

Therefore, the Defendant's sentence is vacated and the case remanded for resentencing.

The second error patent concerns the sentencing judge's failure to set the amount of the monthly probation supervision fee. *See State v. Pounds*, 581 So.2d 319 (La.App. 1 Cir. 1991). In *State v. Hardy*, 432 So.2d 865 (La.1983), the supreme court remanded the case with instructions to modify the condition of probation to specify the amount of the supervision fee within the range allowed under La.Code Crim.P. art.

895.1.

Since the sentence is vacated for the failure to set the amount of restitution, we direct the lower court to set the amount of the probation supervision fee at the resentencing proceeding if the Defendant is once again placed on probation.

**ASSIGNMENT OF ERROR NO. 1:**

The Defendant contends the trial court erred in admitting the taped statement of Louis Hutchinson, III, in violation of the Defendant's constitutional right of confrontation.

At the Defendant's trial, Louis Hutchinson asserted his Fifth Amendment privilege against self-incrimination and exercised his right not to testify. The State then moved to introduce a taped statement by Hutchinson made on September 13, 2001. Defense counsel objected to the introduction of the taped statement, asserting: the Defendant was being denied the right to confront and cross-examine Hutchinson, there were breaks in the tape when it was played, the tape could not be admitted unless its author was called as a witness, the tape was not provided prior to trial, the statement of a witness could not be introduced, and it was not a statement against Hutchinson's interest. However, the judge ruled Mr. Hutchinson, having asserted his Fifth Amendment right, was unavailable as a witness pursuant to La.Code Evid. art. 804; therefore, his statement was admissible. The trial court made the following remarks when ruling on the admissibility of the taped statement:

> In the statement, Mr. Hutchinson incriminates himself in additional crimes. He incriminates himself in the crime of bribing Mr. Cormier with money and possibly a job. He incriminates himself in a conspiracy with Mr. Cormier and Mr. Alexander in - to bribe Mr. Vernon. So that, in this situation, particularly with reference to his statements regarding Cormier, he is subjecting himself to additional criminal charges. In addition to that, of course, he is incriminating himself for the possibility of civil action against him as well as in expanding the course and scope of the conspiracy and the course - and additional incrimination

4

concerning Mr. Cormier. So that lends some reliability to his statement.

And of course, as to Mr. Cormier, it involves two different bribery attempts, that he gave him money at two different times. And what makes him more reliable also is the fact that he gave a personal check and that there would be written evidence of the commission of that crime which he presented - which he told the police about, so that that would give the police physical evidence as well as his incriminating statement to use against him to prosecute him for that offense.

Now, what is the reliability of his statements which tend to involve Mr. Alexander? Well, we have already heard in this case on Mr. Alexander's recorded statement that Mr. Alexander . . . stated that he was aware and was sure that Mr. Hutchinson was going to give Mr. Vernon the job in exchange for the vote. . . . So that further verifies the credibility and the reliability of the statement of Mr. Hutchinson.

In addition to that, Mr. Boynton's testimony at the trial also lends credence to the statements of Mr. Hutchinson.

. . . .

And then, of course, further giving credibility to the reliability of the statement has been the testimony of Mr. Vernon that Mr. Alexander set up the meetings with Mr. Hutchinson.

. . . .

So the statement has inherent reliability.

And the statement of course is a self-inculpatory statement of Mr. Hutchinson. And this court finds, after a fact-intensive inquiry, that the statement is truly a statement of inculpation of Mr. Hutchinson and also of the others involved in the alleged bribery.

The Defendant contends the statements of Louis Hutchinson were not subjected to cross-examination, he made contrary assertions, the interview was given after Hutchinson's conviction but prior to sentencing, the jury was not permitted to observe Hutchinson's demeanor at the time he made the statement, and the statement was not credible. Defendant also contends the trial court committed reversible error in allowing the jury to hear Hutchinson's statement because the application of La.Code Evid. art. 804's "unavailable" provision is inapplicable where the constitutional rights

5

to confrontation and cross-examination are implicated. The Defendant further contends the broad exception applied by the trial court is unconstitutional inasmuch as it is not sufficient that a witness be unavailable since there are Due Process concerns that must be addressed.

> The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This right provides "'two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination.'"

*State v. Welch*, 99-1283, p. 4 (La. 4/11/00); 760 So.2d 317, 320 (citation omitted).

However, as the fourth circuit noted in *State v. Brown*, 97-2260, p. 11 (La.App. 4 Cir. 10/6/99); 746 So.2d 643, 649-50:

> The U.S. Supreme Court has repeatedly recognized that although the literal language of the Confrontation Clause provides for face-to-face accusation at trial, this provision does not represent an absolute bar to the use of hearsay testimony. *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The Court has specified instead that if an out-of-court declarant is unavailable to testify,
>
> > [H]is statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
>
> *Id*. at 66, 100 S.Ct. at 2539 (footnote omitted).

*See also State v. Marston*, 2000-0589 (La. 3/16/01); 780 So.2d 1058.

Thus, before the court can determine if the admission of Louis Hutchinson's statement violated the Defendant's right to confrontation, we must determine whether Hutchinson's statement was admissible under an exception to the hearsay rule.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter

6

asserted." La.Code Evid. art. 801(C). Hearsay is not admissible except as provided for by law. La.Code Evid. art. 802. If a declarant is unavailable as a witness, a statement made by the declarant that is against the declarant's interest is not excluded by the hearsay rule. La.Code Evid. art. 804(B)(3). Accordingly, there is a two prong test that must be satisfied before a declarant's statement is admissible as a statement against interest under La.Code Evid. art. 804 (B)(3):

1)    the declarant must be unavailable as a witness; and

2)    the statement must be a statement against the declarant's interest.

*AVAILABILITY*

A declarant is deemed unavailable under La.Code Evid. art. 804(A)(1) by a finding of the trial court that the declarant has invoked a privilege and is consequently exempt from testifying. Hutchinson asserted his Fifth Amendment privilege against self-incrimination and refused to testify at trial. Accordingly, he was unavailable. *State v. Dotch*, 298 So.2d 742, 745 (La.1974); *cert. denied*, 420 U.S. 976, 95 S.Ct. 1401 (1975); *See also State v. Bright*, 98-0398 (La. 4/11/00); 776 So.2d 1134.

*STATEMENT AGAINST INTEREST*

The Defendant asserts that the taped statement does not meet the requirements of La.Code Evid. art. 804(B)(3). Defendant contends the taped statement is not a "statement," as Article 804 (B)(3) does not refer to an extended declaration but instead refers to a single remark.

A statement is "[a]n oral or written assertion." La.Code Evid. art. 801(A)(1). However, in *Williamson v. United States*, 512 U.S. 594, 599, 114 S.Ct. 2431, 2434-35 (1994), the supreme court concluded that the term "statement" in Federal Rule of Evidence 801 meant a "single declaration or remark" and would "cover only those declarations or remarks within the confession that are individually self-inculpatory."

7

The taped statement of Louis Hutchinson, III was played to the jury during the testimony of Detective David Landry. The statement was not transcribed as part of the trial transcript. The notation at the time the tape was played at trial reads as follows: "(At this time, State's exhibit Number 22, the tape-recorded interview of Louis Hutchinson dated 9-13-01, was played to the jury.)" After the tape was played, Detective Landry testified he did not know the length of the taped statement. Defendant does not inform the court of the length of the tape, but only asserts it is not a statement because La.Code Evid. 804(B)(3) does not refer to an extended declaration.

Upon review of the taped statement, we note that it consists of an interview of Louis Hutchinson, III that is approximately forty minutes in length. Under La.Code Evid. art. 801, only those statements on the tape that are self-inculpatory can be considered statements. Defendant has pointed to no portion of the tape or to any particular remarks that are not self-inculpatory, and trial counsel did not seek to have any portion of the statement redacted.

Defendant also calls into question whether the statement was actually against Louis Hutchinson's interest, because he had already been convicted. Defendant further questions Hutchinson's motivation for making the statement.

A statement against interest is:

> [a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.

La.Code Evid. art. 804(B)(3).

Upon review, a large portion of the taped statement is self-inculpatory and the trial court discussed numerous portions of the statement that were self-inculpatory in

8

its ruling on the admissibility of the statement.

Defense counsel cites *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056 (1986), indicating Hutchinson's statement is unreliable and calls into question Hutchinson's motive for making the statement. In his argument, Defendant relies heavily on the fact that Hutchinson's statement was made after his conviction, but before he was sentenced.

> [A] codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another.

*Id*. at 545, 2064.

At the trial on May 13, 2002, the State asserted that it had made no oral or written agreement with Louis Hutchinson and had promised him nothing in exchange for his testimony at the Defendant's trial. The judge noted he had a discussion with Hutchinson's attorney, at which time the attorney requested that the judge take any cooperation by Hutchinson into consideration at sentencing, specifically, his testifying at the trial of the Defendant. Assistant District Attorney Vines told the court he was not present during the meeting and no written or oral agreement between the State and the Defendant existed.

There is nothing else in the record regarding Hutchinson's motivation for making the statement and Defendant has failed to point to any improper motive for making the statement or to prove that Hutchinson was attempting to curry favor by making the statement. The trial court determined that Hutchinson's statement was "inherently reliable" based on the fact that Hutchinson implicated himself in various other crimes and because testimony at trial prior to the admission of Hutchinson's statement supported the remarks made by Hutchinson in his taped statement. Upon

9

reviewing the taped statement, Hutchinson does implicate himself in various other crimes. Accordingly, we find Defendant has failed to show Hutchinson's motivation for making the statement was improper or that the statement is unreliable.

In light of the above discussion, we cannot say the trial court erred in determining the statement was reliable and a statement against the declarant's interest. We find the taped statement meets the threshold requirements for admissibility under La.Code Evid. art. 804(B)(3).

For the reasons stated above, we find the Defendant's right to confrontation was not violated by the admission of the taped statement of Louis Hutchinson, inasmuch as the trial court determined Hutchinson was unavailable, the statement was a statement against interest, and the statement was reliable. Defendant has not presented any specific argument for the unreliability of the taped statement, other than the fact the statement was made after Hutchinson's conviction. The Defendant contends that Hutchinson made contrary assertions, but points out none.

*PREJUDICE VERSUS PROBATIVE VALUE*

The Defendant further contends the prejudicial effect of the tape outweighed its probative value. Although we do not find that the tape violates the Defendant's right to confront witnesses, if the prejudicial effect of the tape outweighs its probative value, the tape would be inadmissible under La.Code Evid. art. 403.

The Defendant specifically contends the jury was confused as to the differences between the charges and requested the judge explain the possible verdicts on two different occasions. Defendant concludes the jury's ability to consider the totality of the evidence fairly was affected by Hutchinson's statement and the reliability of the statement was called into question at that time.

The jury sent two notes to the judge during deliberations. The first note read

as follows: "We need a description of the three responsive verdicts." The judge then read the portion of the instructions to the jury regarding the responsive verdicts of public bribery, attempted public bribery, and not guilty. The second note read as follows: "Can we see the definitions in writing so we can review the differences between the charges?" The attorneys did not agree to allow a copy of the instructions to be given to the jury. Accordingly, the judge informed the jury that the law did not permit him to provide the jury a written copy of the instructions. Juror Hoover responded as follows: "Well, I just don't think we're understanding the differences. I mean, we understand not guilty, but the differences between the first two." The judge then read the instructions regarding public bribery and attempted public bribery again. The jury returned a verdict of guilty of public bribery.

There is no indication in the record as to the cause of the jury's confusion over the differences between public bribery and attempted public bribery. The Defendant has pointed out no reason why the questions regarding the jury instructions brings the reliability of the statement into question, and presents no specific portion of the statement as being specifically prejudicial to him.

Louis Hutchinson, III's statement was properly admitted and the admission did not violate the Defendant's right to confrontation. Accordingly, this assignment lacks merit.

**ASSIGNMENT OF ERROR NO. 2:**

The Defendant contends the trial court erred in sentencing the Defendant to an excessive sentence which was not sufficiently particularized to the offender or the offense. More specifically, the Defendant contends the mitigating factors in this case are numerous and a shorter probated sentence is appropriate in this case. As we have found the sentence must be set aside due to errors patent, this assignment of error is

11

now rendered moot.

**DECREE:**

For the reasons stated herein, the Defendant's conviction is affirmed, however, his sentence is vacated and the case remanded for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; AND
CASE REMANDED FOR RESENTENCING.**