# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 06-1451

**STATE OF LOUISIANA**

**VERSUS**

**JASON LEE SHORT**

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, DOCKET NO. 05-0736
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, John D. Saunders and Michael G. Sullivan, Judges.

**AFFIRMED.**

J. Rodney Messina
256 East Boulevard
Baton Rouge, LA 70802
(225) 343-9422
COUNSEL FOR DEFENDANT/APPELLANT:
    Jason Lee Short

Bradley R. Burget, Assistant District Attorney
Seventh Judicial District
4001 Carter Street, Suite 9
Vidalia, LA 71373
(318) 336-5526
COUNSEL FOR APPELLEE:
    State of Louisiana

**COOKS, Judge.**

_____FACTS AND PROCEDURAL HISTORY

In the early morning hours of April 5, 2005, Jason Lee Short and Joseph Loncar allegedly left Short's residence to rob a crack dealer. En route, they spotted the victim, Richard Cupstid, walking down Roundtree Road in Concordia Parish. Cupstid was struck by Short's vehicle. He was then beaten and robbed. Short and Loncar then got back in the vehicle and exited Roundtree Road onto U.S. Highway 84/65. Within minutes, they re-entered Roundtree Road and headed back to Short's residence, where they again saw the victim. Cupstid was then shot in the head at close range and left on the side of the roadway. Cupstid died as a result of his injuries.

On June 1, 2005, the State filed an indictment charging the Defendant, Jason Lee Short, with second degree murder, in violation of La.R.S. 14:30.1. A jury trial was held and Defendant was found guilty of second degree murder. Defendant was subsequently sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.

_____Defendant is now before the court asserting three assignments of error. Defendant contends the trial court erred in denying his objection to the hearsay statements made by an unavailable co-perpetrator, the trial court erred in denying his motion for mistrial, and the trial court erred in allowing Investigator Jimmy Darden to testify as an expert without being tendered as such.

_____ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Defendant contends the trial court erred in denying his objection to the hearsay statements made by the unavailable co-perpetrator Joseph Loncar. These statements were introduced into evidence via the

testimony of Angela Mapp and Keysha Freeman, which Defendant argues is in direct violation of his Sixth Amendment right.

On May 22, 2006, Defendant filed a Motion in Limine, seeking to prohibit the State from eliciting testimony from several named witnesses regarding statements Joseph Loncar made to them about the events on the night of April 5, 2005. At a hearing, the trial court granted the motion "to the extent that any direct criminal activity will be excluded." The trial court later clarified that if, during their testimony, witnesses testified regarding what Loncar said the Defendant did, that testimony would not be admissible.

At trial, Loncar exercised his Fifth Amendment privilege against self-incrimination and was declared unavailable to testify. The State later called Keysha Freeman and Angela Mapp to testify. Freeman was questioned as follows:

Q. Did Mr. Loncar make any statements to you?

A. He told me - -

Q. Just, did he make some statements to you?

A. Yes, sir.

Q. Did he indicate to you that he had robbed somebody?

A. Yes, sir.

Q. Did he indicate to you that he robbed somebody with a gun?

A. I'm not sure if he robbed him with a gun, but I remember hearing him saying something about pistol whipping.

Q. Did he pistol whip somebody?

A. He said that a pistol whipping took place.

Q. Now, did he tell you how this occurred whether he was in a vehicle or not?

A. Yes, sir.

Q. Did he tell you whether he was the driver of the vehicle or passenger of the vehicle?

A. He said he was on the passenger side.

Q. Did he tell you that someone may have been run over?

A. Yes, sir.

Q. Did he tell you whether or not this occurred before or after the robbery?

. . . .

Q. Did Mr. Loncar indicate whether or not the running over of somebody occurred prior to the robbery or after the robbery?

A. I believe it was after.

Q. After?

A. Yes, sir.

Q. According to what Mr. Loncar told you?

A. Yes, sir.

Q. Did Mr. Loncar tell you whether or not he shot anyone?

A. No, sir.

Q. He didn't tell you anything or he told you he did not shoot someone?

A . He told me he did not shoot anyone.

Q. The only information you have is what Mr. Loncar told you?

A. Yes, sir.

Angela Mapp was then questioned as follows:

Q. Did Mr. Loncar eventually tell you why he wanted you to come to Vidalia and pick him up?

A. Yes, sir, he did.

Q. Did he tell you whether or not he was involved in a robbery?

A. Yes, he did.

Q. Did he tell you that he robbed a person?

. . . .

Q. Did he indicate to you whether or not he used a gun in the crime that he committed of robbery?

A. Yes, sir, he did.

Q. Did he tell you whether or not he beat the person that he robbed?

A. Yes, sir, he did.

Q. Did he tell you that there was a vehicle used in this crime?

A. Yes, sir.

Q. Did he tell you whether or not he was the driver or the passenger of this vehicle.

A. He said he was in the passenger's side.

Q. Did he tell you whether or not somebody was shot?

A. Yes, sir, he did.

Q. Did he indicate whether or not he shot that person?

A. He said he did not shoot this person.

Q. Did he indicate whether or not the robbery and the beating that he inflicted on this person occurred before or after this person was run over?

A. He said before.

Q. He said a robbery occurred?

A. A robbery occurred -- well, a beating, a robbery and then the boy got run over.

Q. And the shooting occurred after that?

A. Yes, sir.

Defendant asserts for any statement Loncar made to be admissible at trial, the statement must qualify as an exception to the hearsay rule set out in La.Code Evid. art. 804(B). Defendant argues none of the exceptions in Article 804(B) were met.

-4-

Defendant additionally asserts the statements made by Loncar were not statements against interest, as alleged by the State, because they were statements against the interests of the Defendant and not those of Loncar. The Defendant then asserts the statements made by Loncar were testimonial in nature; thus, falling under the purview of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).

Louisiana Code of Evidence Article 804 provides, in pertinent part, as follows:

> B. Hearsay exceptions.   The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
>  . . . .
>
> (3) Statement against interest.  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true.  A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

In *State v. Burns*, 32,904, pp. 8-9 (La.App. 2 Cir. 2/1/00), 750 So.2d 505, 511, the second circuit discussed statements against interest as follows:

> The Louisiana Supreme Court has recognized an exception to the hearsay rule for statements made against the declarant's own penal interest.  *State v. Gilmore*, 332 So.2d 789 (La.1976).  Third-party testimony concerning such statements is allowed when the declarant himself is unavailable to testify.  *State v. Hudson*, 361 So.2d 858 (La.1978).  In order for such statements to be admissible, however, there must be indications that the statements are truly reliable.  *State v. Rushing*, 464 So.2d 268 (La.1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986).  In *Rushing*, the court stated that the assumption is that a person would not normally admit to the commission of a crime if it were not true, but unless the statement is truly against the declarant's penal interest, its reliability is suspect.

In *State v. Lucky*, 96-1687 (La. 4/13/99), 750 So.2d 801, the Louisiana Supreme Court stated:

> Moreover, the hearsay exception for declarations against penal interest "does not allow admission of

non-self-inculpatory statements by accomplices, even if they are made within a broader narrative that is generally self-inculpatory." *Williamson v. United States*, 512 U.S. 594, 600-01, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Accordingly, only the self-inculpatory parts of an accomplice's confession should be admitted.

Loncar was considered unavailable, pursuant to La.Code Evid. art. 804(A)(1), because he invoked his Fifth Amendment privilege against self-incrimination and refused to testify. *State v. Alexander*, 03-167 (La.App. 3 Cir. 9/10/03), 854 So.2d 456. The statements made by Loncar to Freeman and Mapp were against his interest, as he indicated he was involved in the beating and robbing of Cupstid and was present when Cupstid was run over and shot. The statements made by Loncar were statements against his interest and Loncar was unavailable to testify, thus Loncar's statements to Freeman and Mapp were admissible under Article 804(B)(3) as statements against interest.

Defendant also asserts the testimony of Freeman and Mapp was inadmissible because it fell under the purview of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), which bars the use of testimonial out-of-court statements at trial unless the witness is unavailable and the defendant had an opportunity to cross-examine that witness. In *Crawford*, the Supreme Court stated that its ruling applied to testimonial evidence, which applied, at a minimum, to prior testimony at a preliminary hearing, before a grand jury, or at a former trial, and to police interrogations.

The statements made by Loncar to Freeman and Mapp are not considered testimony at a preliminary hearing, before a grand jury, or at a former trial nor statements made during police interrogation. As noted in *State v. Miller*, 95 Conn.App. 362, 896 A.2d 844 (2006), *cert. denied,* 279 Conn. 907, 901 A.2d 1228 (2006), the statements at issue are the sort of remarks to an acquaintance that the *Crawford* court proclaimed to be nontestimonial. The court in *Miller*, went on to

state that "[t]he courts of this land, both federal and state, are in agreement that statements made to friends in unofficial settings do not constitute testimonial hearsay." *Id*. at 384 (citations omitted). Accordingly, we find that the statements made by Loncar to Freeman and Mapp are non-testimonial, and their admission did not violate the ruling in *Crawford*. Therefore, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, Defendant contends the trial court erred when it denied his motion for mistrial when the victim's father made accusations in the form of an outburst that consequently disrupted the court proceedings.

The following occurred during the testimony of Bobby Beard:

Q.    Any conversations or any statements by these two individuals?

A.    When they walked in, Joe said, "You're a crazy mother f_ _ _er," or something like that and Jason said, "I'm a real mother f_ _ _er, boy," and went on. I just kept laying on the couch.

**UNIDENTIFIED SPEAKER:**

I'm sure he knows what he was.

**THE COURT:**

All right. Sir -- you have to remove this gentleman.

**MR. MESSINA:**

Your Honor, can we approach?

**THE COURT:**

Surely.

**UNIDENTIFIED SPEAKER:**

He's really an animal.

**THE COURT:**

Sir.

**UNIDENTIFIED SPEAKER:**

(Inaudible)

**THE COURT:**

All right. Remove that gentleman too. There will be no demonstrations made. Remove the gentleman in the checkered shirt, not to come back in. The other gentleman either and anybody else that wants to leave. We'll have no outbursts in the courtroom. I want both those gentlemen held.

. . . .

Ladies and gentlemen of the jury, totally disregard anything that is not evidence that has nothing to do with this trial. The Court will deal with that in another venue. Carry on, Mr. Burget.

Defense counsel subsequently moved for a mistrial. The parties then stipulated that the victim's father was the man who made the initial outburst. Then, Defendant's father responded with his own outburst. The trial court offered to poll the jury, if the parties agreed. The parties did not ask for the jury to be polled; thus, the trial court denied the motion.

> "Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial." La.C.Cr.P. art. 775. Mistrial is a drastic remedy, and is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial. *State v. Bates*, 495 So.2d 1262 (La.1986); *State v. Wingo*, 457 So.2d 1159 (La.1984). The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion. *State v. Sanders*, 93-0001 (La.11/30/94), 648 So.2d 1272; *Wingo*, 457 So.2d at 1166.

*State v. Wessinger*, 98-1234, p. 24 (La. 5/28/99), 736 So.2d 162, 183, *cert. denied*, 528 U.S. 1050, 120 S.Ct. 589 (1999), *superceded by statute on other grounds*.

Defendant argues the unexpected outburst prejudiced him and the trial court's instruction to ignore the outburst did not undo that prejudice. He also alleges the statements made by the victim's father indicated how he felt about Defendant and

-8-

implied his opinion regarding Defendant's guilt.

In *Wessinger*, 736 So.2d 162, the defendant argued the trial court erred when it declined to declare a mistrial when the victim's mother broke out into tears after the victim's sweater was introduced into evidence and when there was an outburst in the courtroom after the tape of the victim's 911 call was played for the jury. Upon hearing the tape of his daughter's last moments, the victim's father shouted out "son of a bitch." *Id*. at 183. The defendant then moved for a mistrial, which was denied. The supreme court found the trial court had not abused its vast discretion in denying the mistrial. Additionally, the defendant did not demonstrate how these outbursts could have prejudiced him to such a degree that a mistrial was warranted. The court then stated the following: "Again, we must credit the jurors with the good sense and fair-mindedness to see these outbursts for what they were, the natural and irrelevant expression of human emotion, and not let the outbursts influence their decision on defendant's penalty." *Id*.

Based on the supreme court's decision in *Wessinger* and the fact the trial court instructed the jury to disregard the outbursts, we find the trial court did not abuse its discretion in denying Defendant's motion for mistrial. Accordingly, this assignment of error lacks merit.

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, Defendant contends the trial court erred in allowing the State to permit Investigator Jimmy Darden to testify as an expert without being tendered as such.

In brief to this court, Defendant argues Darden offered testimony without being tendered as an expert witness. Specifically, Darden testified it was "physically impossible" for the evidence to corroborate Defendant's testimony. Darden also

testified as to the victim's state of mind and he testified as to what he believed occurred on the night in question. Defendant asserts that each of these statements are Darden's opinion.

Defendant cites La.Code Evid. art. 701, which states that if a witness is not testifying as an expert, his testimony is limited to opinions that are rationally based on the perception of the witness and are helpful to a clear understanding of his testimony or the determination of a fact at issue. Defendant argues Darden should not have been allowed to testify regarding the Defendant's credibility or to the placement of the body. Additionally, he urges Darden was not eligible to testify as to the sequence of events because those facts were unknown. Defendant then asserts that Darden testified as to the order of events stating, "[h]e was hit by the vehicle first." Additionally, Darden testified about whether Defendant was truthful. Defendant states that pursuant to La.Code Evid. art. 704 an expert witness shall not express an opinion as to the guilt or innocence of the accused. Defendant further argues since Darden was not qualified as an expert, yet was treated as one by the Court, his opinions concerning the guilt or innocence of the Defendant should not be allowed. By testifying as to what he believed to have happened on the night in question, "Darden approaches that exact opinion through his assessment of the scene and of Short's credibility."

Lastly, Defendant argues Darden could not extrinsically attack his credibility pursuant to La.Code Evid. art. 607, since Darden went beyond the inconsistent statements made by the Defendant and focused on "other aspects of Short's statement to which Darden was not privy to as a lay witness."

Physical Impossibility

During his testimony, Darden testified as follows: "That's where the damage

is done. There's no way that he's going to strike him and put all the evidence in this ditch. It's physically impossible. I have, we, there's no one that will concur with that." We note that defense counsel did not object to Darden's testimony. Thus, Defendant waived his right to seek review of the issue based on his lack of contemporaneous objection. La. Code Crim.P. art. 841. Therefore, the issue is not properly before this court.

Sequence of Events

The Defendant asserts Darden improperly testified as to the order of events and quotes the following: "He was hit by the vehicle first." At trial, Darden was asked the following:

> Q.    Through your investigations, interviews with other suspects, did you make a determination of whether the robbery occurred first or rather the striking of Mr. Cupstid occurred first, through what you discerned through witnesses and conversation, statements?
>
> A.    He was hit by the vehicle first.

There was no objection following this testimony. Accordingly, Defendant waived his right to seek review of the issue based on his lack of contemporaneous objection under La.Code Crim.P. art. 841, and the issue is not properly before the court.

State of Mind

Defendant asserts that Darden testified as to the state of mind of the victim. The page numbers cited by the Defendant in regard to this testimony are incorrect, and our review of the record does not indicate that Darden testified as to the victim's state of mind.

Credibility

Defendant next asserts that Darden should not have been allowed to testify regarding Defendant's credibility. Darden did discuss Defendant's truthfulness several times during his testimony. The trial court sustained Defendant's objections

concerning his truthfulness, stating "I think he can testify to what he saw and that sort of thing. But I'm not going to allow him to give a conclusion about the truthfulness of something of that particular one focused question."

Defendant also cites particular pages of the trial transcript in support of this claim; however, there is no testimony on the referenced pages wherein Darden commented on his credibility. Defendant has not properly pointed out what additional testimony he wants this court to review; therefore, we decline to further address his complaints. Uniform Rules–Courts of Appeal, Rule 2-12.4.

Events that Occurred

Defendant contends Darden was improperly allowed to testify as to what he believed occurred on the night in question. When Darden began to testify as to what he thought occurred on that night, defense counsel objected on the basis that Darden's testimony called for speculation. The State then asserted that Darden was talking about what he thought happened. The objection was overruled.

Louisiana Code of Evidence Article 701 discusses the admissibility of opinion testimony from lay witnesses, as follows:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
>
> (1) Rationally based on the perception of the witness; and
>
> (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

Based on Article 701, it was permissible for Darden to give his opinion as a lay witness, if his opinion was based on his perceptions of the scene and was helpful to a clear understanding of his testimony or a fact at issue. "A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert." *State v. Gibson*, 97-108, p. 5 (La.App. 3 Cir. 4/30/97),

693 So.2d 286, 291, *citing State v. Lowery*, 609 So.2d 1125, 1128 (La.App. 2 Cir.1992), *writ denied*, 617 So.2d 905 (La.1993). Defendant's objection at trial was based solely on the fact that Darden was testifying as to "the way he thinks it happened" and not on the basis that he was testifying as an expert and had not been qualified as such. Defendant did not object on the grounds that Darden failed to set forth what personal observations he based his testimony. Darden was the investigating officer, and therefore, we find that his "thoughts" and conclusions resulted from his observations and evidence gathered at the scene. Accordingly, this assignment lacks merit.

## DECREE

For the foregoing reasons, Defendant's conviction is affirmed.

**AFFIRMED.**