# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-1546

STATE OF LOUISIANA

VERSUS

QUENTIN TRUEHILL

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 285784
HONORABLE THOMAS MARTIN YEAGER, DISTRICT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**James C. Downs**
**District Attorney - 9th JDC**
**Thomas Rockwell Willson**
**Assistant District Attorney**
**P. O. Drawer 1472**
**Alexandria, LA 71309**
**(318) 473-6650**
**Counsel for Plaintiff-Appellee:**
**State of Louisiana**


**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant-Appellant:**
**Quentin Truehill**

**PICKETT, Judge.**

## FACTS

On December 1, 2006, the defendant, Quentin Truehill, and two of his neighbors, Jared Jamal Gotch and Anthony James Jones, drove from Lafayette to Alexandria in a stolen Honda CRV. While they were in Alexandria, they donned masks and gloves before accosting a newspaper deliveryman during his early morning route. They held a gun to the victim's head and took his wallet. They then drove away from the scene of the robbery. The victim called emergency services and pursued them in his truck. The Alexandria police took over the pursuit and followed the trio into a dead end apartment complex. Jones was trapped in the car by an officer's unit, but the defendant and Gotch ran away. Gotch was apprehended at the fence bordering the complex, but the defendant jumped the fence and escaped. The police recovered the victim's wallet and one handgun from the car.

After the police gave up searching for the defendant, he went back into the apartment complex and stole a vehicle from another newspaper delivery person. He drove to Lebeau where he contacted Jones' girlfriend, a mutual neighbor and friend, to pick him up and drive him home. The defendant abandoned the second stolen vehicle at the Lebeau exit. Both Jones and Gotch identified the defendant as the third participant in the crime. Additionally, Jones' girlfriend reported her part in the morning's events and what the defendant told her had happened in Alexandria.

On February 23, 2007, the State filed a bill of information charging Jared Jamal Gotch, Anthony James Jones, and Quentin Truehill all with the same armed robbery, in violation of La.R.S. 14:64, based on the December 1, 2006, armed robbery of Richard Perkins. Following a separate trial by jury, the defendant was found

1

guilty as charged on June 17, 2009.  On June 23, 2009, the sentencing court ordered

the defendant to serve forty years at hard labor without benefit of probation, parole,

or suspension of sentence and credited the defendant for time served.

The defendant now appeals.  We affirm the defendant's conviction and

sentence.

## ASSIGNMENTS OF ERROR

1.  The use, at trial, of the two unsworn statements of co-defendant
Anthony Jones made to the police, instead of his testimony, violated
Quentin Truehill's federal and state constitutional rights to confront and
cross-examine all witnesses the state used against him.

2.  It was ineffective assistance of counsel for Quentin Truehill's trial
counsel's apparent failure to object at trial, to the state using, unsworn
statement's [sic] co-defendant Anthony Jones made to police, instead of
his testimony.

3.  It was ineffective assistance of counsel for Quentin Truehill's trial
counsel to not object and move for admonishment, when a testifying
police officer told the jury that Mr. Truehill killed someone subsequent
to the armed robbery.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this

court for errors patent on the face of the record.  After reviewing the record, we find

there are no errors patent.

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

The defendant argues that the trial court should have suppressed unsworn

statements made by his codefendant, "The use, at trial, of the two unsworn statements

by co-defendant Anthony Jones made to the police, instead of his testimony, violated

Quentin Truehill's federal and state constitutional rights to confront and cross-

examine all witnesses the state used against him."  The defendant also contends that

he was denied effective assistance of trial counsel. "It was ineffective assistance of

2

counsel for Quentin Truehill's trial attorney's apparent failure to object at trial, to the state using, unsworn statement's [sic] co-defendant Anthony Jones made to police, instead of his testimony."

The defendant asserts that the state's reliance on La.Code Evid. art. 804 in having the codefendant declared unavailable was misplaced. The defendant avers that, under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), the defense must first be given an opportunity to cross-examine the witness before hearsay evidence of an unavailable witness is used in court and that he had no such opportunity to cross-examine the witness. The defendant contends that he was prejudiced because, without the statement, the conflicts in the other witnesses' testimony would have created reasonable doubt.

The state responds that there was no violation of the defendant's right to confront and cross-examine because the witness was present in the courtroom and physically available to testify. The court found him to be legally unavailable to testify as set forth in La.Code Evid. art. 804. The state further contends that *Crawford v. Washington* does not apply to the instant case because it dealt with testimonial statements when the declarant was not available for cross-examination. The state speculates that Jones was attempting to help the defendant by not implicating him. Thus, the state posits that Jones was more available for cross-examination than for direct examination. The state continues that the statements by Jones were not the only source of the information. Both Gotch and Isadore White testified to the same facts, and much of the other evidence supported their testimony. The state urges, moreover, that the detective who witnessed Jones' identifying the defendant during a photographic lineup was able to testify about the identification.

3

This court has held that ineffective assistance of counsel claims must meet two separate criteria in order to be valid:

> The right of a defendant in a criminal proceeding to the effective assistance of counsel is constitutionally mandated by the Sixth Amendment of the U.S. Constitution. In order to prove that counsel was ineffective, the defendant must meet the two-pronged test enunciated by the Supreme Court. First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that this deficiency prejudiced the outcome of the trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Brooks*, 505 So.2d 714 (La.1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his defense attorney failed to meet the level of competency normally demanded of attorneys in criminal cases. *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Fickes*, 497 So.2d 392 (La.App. 3 Cir.1986), *writ denied*, 515 So.2d 1105 (La.1987).

> In considering allegations of ineffectiveness, defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance. The United States Supreme Court has held that the benchmark for judging a charge of ineffectiveness is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be considered to have produced a just result. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Strickland*, 466 U.S. 668, 104 S.Ct. 2052.

> It is not enough for an accused to make allegations of ineffectiveness; the accused must couple these allegations with a specific showing of prejudice. *State v. Brogan*, 453 So.2d 325 (La.App. 3 Cir.), *writ denied*, 457 So.2d 1200 (La.1984). A claim of ineffective assistance of counsel may be disposed of based upon a failure to satisfy either criteria of the established two-pronged test; if the accused's claim fails to satisfy one, the reviewing court need not address the other. *State v. James*, 555 So.2d 519 (La.App. 4 Cir.1989), *writ denied*, 559 So.2d 1374 (La.1990). A brief review of the defendant's complaints against his attorneys will demonstrate the deficiency of his arguments.

*State v. James*, 95-962, pp. 4-5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465.

Thus, in order to determine whether there has been a denial of effective assistance of counsel, we will address both whether the evidence was admissible and whether any error was harmless.

4

DEFICIENT PERFORMANCE

In order to determine whether there has been a deficient performance by defense counsel, we will examine whether or not the evidence was admissible under La.Code Evid. art. 804. The erroneous admission of evidence under La.Code Evid. art. 804 constitutes a violation of a defendant's right to confront his accusers:

> The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." This right is secured for defendants in state as well as federal criminal proceedings. The confrontation clause of our state constitution specifically and expressly guarantees each accused the right "to confront and cross-examine the witnesses against him." *See* La. Const. art. 1, § 16, titled "Right to a Fair Trial."
>
> Confrontation means more than being allowed to confront the witnesses physically. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." Cross-examination is the principal means by which believability and truthfulness of testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, or discredit, the witness.

*State v. Robinson*, 01-273, pp. 5-6 (La. 5/17/02), 817 So.2d 1131, 1135 (citations omitted)(footnote omitted).

Admissibility Under La.Code Evid. art. 804

The defendant argues that the state erred in applying La.Code Evid. art. 804 to determine the admissibility of Jones' statements to the police. Jones' statements were hearsay. Therefore, the rules regarding hearsay evidence apply to the instant case. "Hearsay is an out of court, unsworn, oral or written statement by a third person, which is offered for the truth of its content. Hearsay statements are inadmissible unless they fit into one of the recognized exceptions." *State v. Gremillion*, 542 So.2d

5

1074, 1077 (La.1989)(citation omitted). One such exception to the hearsay exclusionary rule applies to unavailable witnesses:

> A. Definition of unavailability. Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
>
> . . . .
>
> (2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so;
>
> . . . .
>
> B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

La.Code Evid. art. 804.

This court has previously addressed the admissibility of a statement made by an unavailable coperpetrator. *State v. Short*, 06-1451 (La.App. 3 Cir. 5/16/07), 958 So.2d 93, *writ denied*, 07-1473 (La. 2/1/08), 976 So.2d 714, *writ denied*, 07-1646 (La. 2/1/08), 976 So.2d 715, *cert. denied*, ___ U.S. ___, 129 S.Ct. 164 (2008). The defendant argued that his Sixth Amendment right had been violated by two witnesses testifying concerning the statements made by his codefendant, who had invoked his Fifth Amendment right against self-incrimination. The first witness stated the

6

coperpetrator had told her that he had robbed someone, that a pistol whipping occurred during the robbery, that he had not shot anyone, and that, after the robbery, he was a passenger in a car that may have run over someone. The second witness reported that the coperpetrator told her he had used a gun in the commission of a robbery, that he did not shoot anyone, that he had beat a person, and that he was a passenger in the car used to facilitate the robbery and run the person over.

The defendant in *Short* asserted that the statements did not fit within the exception set forth in La.Code Evid. art. 804(B) for statements against interest because they were against the interest of Short and not against the interest of the coperpetrator.

In *State v. Burns*, 32,904, pp. 8-9 (La.App. 2 Cir. 2/1/00), 750 So.2d 505, 511, the second circuit discussed statements against interest as follows:

> The Louisiana Supreme Court has recognized an exception to the hearsay rule for statements made against the declarant's own penal interest. Third-party testimony concerning such statements is allowed when the declarant himself is unavailable to testify. In order for such statements to be admissible, however, there must be indications that the statements are truly reliable. *State v. Rushing*, 464 So.2d 268 (La.1985), *cert. denied*, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). In *Rushing*, the court stated that the assumption is that a person would not normally admit to the commission of a crime if it were not true, but unless the statement is truly against the declarant's penal interest, its reliability is suspect.

> In *State v. Lucky*, 96-1687 (La.4/13/99), 750 So.2d 801, the Louisiana Supreme Court stated:

> Moreover, the hearsay exception for declarations against penal interest "does not allow admission of non-self-inculpatory statements by accomplices, even if they are made within a broader narrative that is generally self-inculpatory." Accordingly, only the self-inculpatory parts of an accomplice's confession should be admitted.

*Short*, 958 So.2d at 96-97 (citations omitted). This court found that the coperpetrator was unavailable due to his refusal to testify and that the statements were against the coperpetrator's penal interest. Therefore, the statements were admissible as statements against interest made by an unavailable witness. *Id*. at 97.

In *State v. Taylor*, 01-1638 (La. 1/14/03), 838 So.2d 729, *cert. denied*, 540 U.S. 1103, 124 S.Ct. 1036 (2004), the defendant in a murder case argued that the state violated his right to confront by eliciting testimony about his nontestifying codefendant. The nontestifying codefendant claimed to have been present, but he denied shooting the victim and asserted that the defendant had fired all three shots. Because the nontestifying codefendant claimed the defendant fired all of the shots, the supreme court determined that the statement by the nontestifying codefendant was not sufficiently self-inculpatory to meet the criteria of La.Code Evid. art. 804. However, because the jury had been necessarily informed that there was a codefendant undergoing a separate trial, any error was harmless because the jury could have reasonably inferred that the defendant and his codefendant would blame each other for the shooting.

In the case before us, out of the hearing of the jury, the state called Jones to the stand. Jones acknowledged that he no longer had a privilege against self incrimination because he had already pled guilty to attempted armed robbery on January 11, 2008, and had no other charges pending against him for the incident. The trial court informed Jones that he would get six months jail time for contempt if he did not testify, and it ordered Jones to testify. Jones still refused to testify. The trial court then held Jones in contempt of court, imposed six months jail time to run consecutively with any other sentence, informed Jones that he could purge the

8

contempt ruling by choosing to testify at any time prior to the conclusion of the defendant's trial, and ordered Jones returned to jail. The trial court then formally found that Jones was unavailable, "Yes, under 804, I find that this witness, Mr. Anthony Jones, is unavailable to testify." Jones clearly refused to testify in direct violation of the court's order and persisted in his refusal despite a contempt ruling. Therefore, Jones was unavailable.

In the first statement introduced by the state, Jones said he had been in a car with Gotch and a man named John, but he did not know John's last name. John had been driving. Jones met John at an apartment complex where he used to live. Jones further denied any knowledge of a plan to commit robbery before the robbery actually happened. Jones said that, when they pulled up at the store, John hopped out and robbed the man while Jones remained in the car. When John got back in the car, they drove away. Jones denied ever having a gun and said that John had and fired the gun. Jones then claimed no other shots were fired because the other gun, silver and chrome, jammed when Jones attempted to fire it. Jones claimed he handed the gun to Gotch, and Gotch discarded the gun when he ran. Jones then identified John as Johnny Anderson from New Iberia. The second statement was a transcript of the photographic lineup wherein Jones identified the defendant as his coperpetrator.

Therefore, in his first statement, Jones admitted to being present, but he placed all blame for the entire transaction on "Anderson." Jones denied any involvement in the actual robbery. The only culpability he admitted was that he attempted to fire a chrome handgun, but he had been unsuccessful because the weapon jammed. Hence, as in *Taylor*, the first statement was not sufficiently against Jones' penal interest to be admissible under La.Code Evid. art. 804. Additionally, the second statement was

9

devoid of any statements against Jones' penal interest. Thus, the second statement was also inadmissible under La.Code Evid. art. 804. Because we find these statements inadmissible under Article 804, there is no need to do a *Crawford* analysis.

Deficient Performance Conclusion

Because the evidence was inadmissible under La.Code Evid. art. 804, defense counsel's failure to object to the evidence constituted a deficient performance.

PREJUDICE

In order to determine whether defense counsel's deficient performance prejudiced the outcome of the defendant's trial, we will examine whether or not the evidence was harmless. The admission of evidence barred by La.Code Evid. art. 804 is subject to a harmless error analysis. *Taylor*, 838 So.2d at 747.

Harmless Error Analysis

The erroneous admission of Jones' statements under La.Code Crim.P. art. 804 is subject to harmless error analysis. *See Cox*, 876 So.2d at 939. Under La.Code Evid. art. 103, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." La.Code Crim.P. art. 921.

> Confrontation errors are subject to a *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) harmless error analysis.
>
> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in

10

> the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Robinson*, 817 So.2d at 1137 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438 (1986))(citations omitted).

In *Cox*, this court examined whether the testimonial hearsay evidence provided any inculpatory information that was not provided by other witnesses at trial. *Cox*, 876 So.2d at 939. Because the testimonial hearsay evidence "connected very important loose ends in this case and was the [sic] among the strongest evidence presented by the State," the error was not harmless, and the defendant was entitled to a new trial. *Id*. at 940.204

In *State v. C.S.D.*, 08-877 (La.App. 3 Cir. 2/4/09), 4 So.3d 204, this court examined whether the admission of prohibited evidence constituted harmless error in a case involving cruelty to a juvenile and false imprisonment. In *C.S.D.*, the State introduced the statement of another of the defendants' victims. The witness's statement showed that the defendants regularly locked her in a windowless room, but it contained no information concerning the defendants' behavior toward the victim in question. This court explained, "[s]uch testimony went to system, intent, and lack of mistake on the defendants' part." *Id*. at 217. The testimonial hearsay evidence was not cumulative, but it corroborated the other evidence submitted at trial. This court determined that the record showed the State had a strong case against the defendants. There was ample other evidence on which to base the defendants' conviction. As a result, this court found that any error in admitting the evidence was harmless.

11

A review of the evidence presented at trial shows that Jones' statement was not essential to the state's case against the defendant. Jones' first statement, by itself, did not implicate the defendant in the armed robbery. Jones' second statement is a transcript of Jones' identifying the defendant in a lineup. In the second statement, Jones said that the third man had not actually been Johnny Anderson, but the statement did not name the defendant as the perpetrator.

The actual photographs used in the lineup presented to Jones containing Jones' signature identifying the photograph of the perpetrator was admitted into evidence. The defendant does not contest the admissibility of that evidence. The record additionally shows that the state presented the same photographs to Gotch, and he identified the same person as the third man in the car. The state also introduced the photographic lineup containing Gotch's identification of the third man into evidence. Additionally, both Gotch and Ms. White identified the defendant as the third man involved in the armed robbery. Thus, any identification of the defendant as the third man in Jones' statements duplicated and corroborated the other evidence in the record. It was cumulative.

Jones' first statement placed the blame for all wrongdoing squarely on "Johnny Anderson." In essence, the third man committed the actual robbery and later fired all shots while Jones remained in the car during the robbery and was unable to fire his handgun during the attempted getaway. In contrast, Gotch stated that the third man, the defendant, had remained in the car during the robbery while Gotch and Jones committed the actual robbery. Gotch also testified that he did not see the defendant with a gun. Instead, Jones had been the only one shooting a firearm.

12

Ms. White's testimony recounted what the defendant had told her about the crime, and in her version, the defendant seemed to have actively participated in the robbery and to have had possession of a gun:

A. Well, I got a phone call about three or four something in the morning, and it was Mr. Truehill from a 318 number saying he needed a ride because he was on his way back home. and I told him I didn't know how to get to Alexandria. Which I was in his car, he drives a silver Mustang. And me and a guy named Young came, and as we was traveling to come this way I was talking to him, and I -- and we was talking about what exit we was meeting up at [sic]. We ended up meeting at the Lebeau exit. When we met at the Lebeau exit he came in a tan or like a goldish color Ford Taurus or Mercury or whatever kind. He parked on the side [of] the road and he threw the keys towards the trees. Well, we got in the car and he drove on home. And he -- he told us that they had robbed a man, and it was him, Anthony and Jay-Rod [sic]. And that they seen a man parked at a store and they -- somehow, someway they got by him and two of them jumped in the car. And I remembered Jared being the passenger. And he said that Jay-Rod [sic] put a gun to the man's head. They drove like a block or so. And after driving a block or so they all gathered back into the car that they was in. But when they had left from home, "Q" was the driver, Anthony was the passenger and Jay-Rod [sic] was in the backseat.

. . . .

A. And Anthony is the other one. And that's how they left home. And when I asked him what happened, he said that when he picked -- he said that when he picked up Anthony and Jared. And when he picked them up from --with the guy, he said that he seen that the man was on the phone calling the police or something, and then the police ended up getting behind them and he had a high speed chase. One of his tires blew out on the car and he ended up going to wherever the apartments was that they had first went and he hit a fence. And once he hit the fence, he said that Anthony was stuck in the car because they had wrecked the front end of the car and Anthony was stuck. Him and Jay-Rod [sic] took off running. When Jared went to jump the fence, a police pulled -- pulled him back down and they got him. But he got away. He said he hid underneath a shed and he had a gun and he threw the gun on top of someone's house. And after everything calmed down, that's when he -- went, and a man was trying to throw a paper upstairs and it ended up falling back down. And once it fell back down, the man got out his car to go pick the newspaper up, and once he picked up the newspaper he say he took the man's car, and that's how he met me [sic].

Thus, the defendant was correct that all three tales were different in the details. However, by all three accounts, the defendant was a principal to the armed robbery, and the defendant was presented to the jury as a principal to armed robbery. In its closing argument, the state did not rely on Jones' account. Instead, it argued that all three codefendants were involved in the robbery. The state asserted that the robbery had been planned because all three men had prepared by putting on masks and gloves. The prosecution theorized that the defendant must have been the mastermind behind the plan because, based on listening to Jones's recorded statement and observation of Gotch during his testimony, neither one of them would have been capable of planning the robbery.

Finally, the state urged the jury to find the defendant was a principal to armed robbery. The trial court's jury instructions informed the jurors in the defendant's case about the law of principals: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the charge constituting the offense, aid and abetted in its commission or directly or indirectly counseled or procure[d] another to commit a crime are considered all principals to the crime." La.R.S. 14:24.

Moreover, even without Jones' statements, there was enough evidence on the record to prove beyond a reasonable doubt an armed robbery occurred and to identify the defendant as a principal to the offense. The victim testified to the details of the armed robbery, there was no mistake concerning the identity of Jones and Gotch as coperpetrators because they both pled guilty, and the defendant was proven to be the third participant through two photographic lineups and the testimony of two witnesses. Therefore, Jones' testimonial hearsay evidence was not essential to the state's case.

Accordingly, we find that any error in admitting the evidence in contravention of La.Code Evid. art. 804 and was harmless.

Prejudice Conclusion:

Because the admission of Jones' statements was harmless error, defense counsel's failure to object to the evidence did not prejudice the outcome of the defendant's trial.

Accordingly, the defense attorney's failure to object to the admissibility of Jones' statements under La.Code Evid. art. 804 did not constitute ineffective assistance of counsel. Although this assignment of error meets the first prong of the *Strickland v. Washington* test, it does not meet the second, and both prongs of test must be satisfied in order to find ineffective assistance of counsel. This assignment of error is without merit.

**ASSIGNMENT OF ERROR NUMBER THREE**

The defendant asserts he was denied effective assistance of counsel for his attorney's failure to object to other crimes evidence, "It was ineffective assistance of counsel for Quentin Truehill's trial counsel to not object and move for admonishment, when a testifying police officer told the jury that Mr. Truehill killed someone subsequent to the armed robbery." The defendant alleges Detective Green testified that, while the defendant was hiding from law enforcement, the defendant killed Jones' cousin because the cousin had been attempting to get the defendant to turn himself in to the police. The defendant argues that the statement was inadmissible and did not constitute harmless error.

The state replies that the same statement was made by Ms. White during trial, and the defense opened the door for Ms. White's testimony when it attempted to elicit

15

a possible bias from Ms. White, and Ms. White responded by stating that she decided to report the defendant after she learned he had murdered someone. The state continues that the detective's statement regarding the murder also occurred on cross-examination, and the defense continued the line of questioning even after the comment. The state urges this court to find both that Detective Green's statement concerning the murder was cumulative evidence and that the defense lawyer's failure to object was trial strategy.

Detective Green testified immediately before Ms. White, and, as pointed out by the state, both statements were made on cross-examination. In context, Detective Green's statement happened when defense counsel asked Detective Green to explain his understanding of the events that morning. Detective Green began by explaining that, according to his understanding, the three men had been in Alexandria when they used a gun to rob a man of his wallet. The victim, and later the police, pursued the perpetrators when they drove away. The three men ended up driving into an apartment complex and getting trapped there because there was not a second egress. The defendant and Gotch fled on foot, and officers were able to apprehend both Gotch and Jones, but the defendant escaped. The defendant hid until the officers were gone and then stole a vehicle. The defendant arrived back in Lafayette by driving the stolen vehicle south and called Jones' girlfriend to pick him up at the Lebeau exit. Detective Green's narrative concluded with the following statement, "And in the meantime, a friend or a cousin of Mr. Jones went and found Mr. Truehill and asked Mr. Truehill to turn himself in. And Mr. Truehill refused and shot and killed that -- that relative in Lafayette."[1]

_____

[1]The record shows that, by January 2, 2009, the defendant had entered into a plea agreement with the state and pled guilty to manslaughter in a second degree murder case in Lafayette Parish.

DEFICIENT PERFORMANCE

Ineffective assistance of counsel does not exist unless there was a deficient performance by the attorney. *James*, 670 So.2d at 465. An alleged error can be construed as trial strategy if there are differing views regarding the advisability of a tactic: This court has long agreed with our brethern of the fourth circuit in recognizing "that if an alleged error falls 'within the ambit of trial strategy' it doesn't 'establish ineffective assistance of counsel.' *State v. Bienemy*, 483 So.2d. 1105 (La.App. 4 Cir. 1986)." *State v. Sias*, 03-891, p. 6 (La.App. 3 Cir. 12/10/03), 861 So.2d 829, 834, *quoting State v. Schexnaider*, 03-144, p. 18 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 462. This court has repeatedly used this approach to trial strategy. *State v. F.B.A.*, 07-1526 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138; *State v. Duplichan*, 06-852 (La.App. 3 Cir. 12/6/06), 945 So.2d 170, *writ denied*, 07-148 (La. 9/28/07), 964 So.2d 351; *State v. Collins*, 04-1441 (La.App. 3 Cir. 3/2/05), 896 So.2d 1265, *writ denied*, 05-1334 (La. 1/9/06), 918 So.2d 1040.

The Louisiana Supreme Court has directly addressed the issue of trial strategy when reviewing an ineffective assistance of counsel claims in *State v. Brooks*, 505 So. 2d. 714 (La. 1987) where it stated:

> While opinions may differ on the advisability of such a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful. *Strickland v. Washington*, 466 US. 668, 104 S. Ct. 2052 (1984).

---

There is no guilty plea or sentencing date in the record. Defendant's trial in the instant case commenced in June 2009, which was well after Defendant had been convicted for the murder.

17

Once Detective Green made the statement, it was already before the jury, so an objection would not have prevented the statement from being made, and an admonishment would have drawn additional attention to the murder. Thus, defense counsel's failure to object could be considered trial strategy.

Because the failure to object or request an admonishment could be considered trial strategy, this claim does not support a finding of deficient performance.

PREJUDICE

In evaluating a given circumstance to determine whether there has been ineffective assistance of counsel, the evaluating court must also find that the error by the attorney, within a reasonable probability, altered the outcome of the proceeding. *Jones*, 765 So.2d at 1199.

As urged by the state, the evidence also came in through Ms. White's testimony. Ms. White made her statement when the defense was attempting to impeach her credibility by showing she must have had an ulterior motive for reporting the defendant's involvement in the robbery. The defense questioned her about whether she would have a reason to lie about the defendant. When the defendant's attorney inquired why she had waited over a year to go to the police, Ms. White gave the following response:

> Actually, it was not a year. It happened December 1ˢᵗ of 2006, and I came in January of 2007. After he killed James in Lafayette Parish, that's when I came down here. It was not no year later, because a year later they was sentencing Anthony and I didn't have no reason to be down here [sic]. I came in '07.

The defendant does not assign error to his trial lawyer's failure to either object to or request an admonishment concerning Ms. White's testimony. Therefore, only objecting to or requesting an admonishment immediately following the statement by

18

Detective Green would have been futile when no such request was made in reference to Ms. White's testimony.

Because the evidence also came in through Ms. White's testimony, this assignment of error does not support a finding that the defendant was prejudiced by his attorney's failure to object or request an admonishment following Detective Green's statement.

As previously stated, both deficient performance and prejudice are necessary to support a finding of ineffective assistance of counsel. This assignment of error supports a finding of neither. Accordingly, it is without merit.

## CONCLUSION

Accordingly, for the reasons stated, the defendant's conviction and sentence are affirmed.

**AFFIRMED.**