# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**11-1085**


**STATE OF LOUISIANA**

**VERSUS**

**JASON L. WALTON**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 16579-08
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.


**AFFIRMED.**


**John F. DeRosier**
**District Attorney**
**Karen C. McLellan**
**Assistant District Attorney**
**Post Office Box 3206**
**Lake Charles, LA   70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward J. Marquet**
**Post Office Box 53733**
**Lafayette, LA   70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jason L. Walton**

**Mark O. Foster**
**Louisiana Appellate Project**
**Post Office Box 2057**
**Natchitoches, LA   71457**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jason L. Walton**

**Jason L. Walton**
**C.B.A.  U.R.  12**
**Louisiana State Prison**
**Angola, LA   70712**

**AMY, Judge.**

A jury convicted the defendant of second degree murder in the shooting death of the victim. The defendant appeals the conviction, questioning the use of a witness's pre-recorded interview and asserting that his trial counsel was ineffective. For the following reasons, we affirm.

**Factual and Procedural Background**

The record indicates that the victim, Dustin Tutson, along with his girlfriend, Natalie Boutte, were driving Ms. Boutte's car in Lake Charles on the evening of May 21, 2008. According to Ms. Boutte's trial testimony, the couple stopped in front of a house where a group of individuals was in the yard. She explained that Mr. Tutson then got out of the vehicle and became involved in an argument. Although Mr. Tutson returned to the vehicle and the couple began driving away, an individual "punched" Ms. Boutte's window. Ms. Boutte testified that Mr. Tutson stopped, and again got out of the car, and told her to take the car and drive around the block. However, Ms. Boutte stated that she did not leave, but instead got out of the car. She explained that shots were then fired and that Mr. Tutson was hit by the second shot. Ms. Boutte testified that someone then "stomped" on Mr. Tutson's head after he was shot and that the group left the scene in a black truck.

The Lake Charles Police Department responded when Ms. Boutte called 911. Detective Lecia McCullough stated that, approximately fifteen minutes after the report of the shooting, authorities stopped a truck fitting the description of the vehicle reportedly seen leaving the scene of the shooting. Jason Walton, the defendant, and Brian Robinson were inside of the truck at the time of the stop. Detective McCullough explained that Ms. Boutte was transported to the scene of the stop, where she identified "Jason Walton as the subject, as the subject that shot Dustin Tutson, and

Brian Robinson was with him." Detective McCullough explained that the two were taken to the Lake Charles Police Department for interviewing.

According to Detective McCullough, authorities subsequently learned of a third subject who purportedly disposed of the weapon involved in the shooting. That individual, the defendant's brother, later showed authorities where he had disposed of the weapon. A handgun was found at that location.

Although Mr. Tutson was taken from the scene, he later died at the hospital. The coroner who performed the subsequent autopsy testified that he listed the cause of death as "a gunshot wound to the trunk[.]" A grand jury ultimately indicted the defendant for second degree murder, a violation of La.R.S. 14:30.1. A jury convicted the defendant as charged. Thereafter, the trial court sentenced the defendant to life in prison without benefit of parole, probation, or suspension of sentence.

The defendant appeals, asserting that:

[1.]   The trial court was in error to allow the state to introduce the hearsay video statement to police into evidence in lieu of a witness' testimony.

[2.]   It was ineffective assistance of counsel for the defense trial counsel to not object during trial of the state introducing evidence of Mr. Walton's prior criminal convictions.

## Discussion

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, we have reviewed this appeal for errors patent on the face of the record. We find no such errors.

*Use of Recorded Statement*

At trial, the State called Detective McCullough as a witness to testify regarding the investigation. On cross-examination, the defendant introduced a tape of Ms. Boutte's interview with police for impeachment purposes. Defense counsel also

suggested that the recording could be used to refresh the detective's recollection. At that time, the interview was not introduced for the truth of the matter asserted.

Subsequently, and now at issue in this assignment of error, the recorded interview again came to the trial court's attention after the State called Ms. Boutte to the stand. During her testimony, the State sought to introduce the previously-admitted recorded interview of Ms. Boutte "for unlimited purposes[.]" The State referenced La.Code Evid. art. 803(5),[1] in support of its assertion that the use of the statement was permissible as an exclusion from the hearsay rule. After discussion outside of the presence of the jury, the trial court permitted the use of the recorded interview as non-hearsay pursuant to La.Code Evid. art. 801(D)(1)(a).

Louisiana Code of Evidence Article 801, the basis on which the recorded interview was introduced, provides, in pertinent part:

> **D.** **Statements which are not hearsay.** A statement is not hearsay if:

---

[1] Article 803 provides, in pertinent part:

**Art. 803. Hearsay exceptions; availability of declarant immaterial**

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> **(5) Recorded recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit but may not be taken into the jury room. This exception is subject to the provisions of Article 612.

Article 612 states:

> **B.** **Criminal cases.** In a criminal case, any writing, recording, or object may be used by a witness to refresh his memory while testifying. If a witness asserts that his memory is refreshed he must then testify from memory independent of the writing, recording, or object. If while testifying a witness uses a writing, recording, or object to refresh his memory an adverse party is entitled . . . to inspect it, to examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

**(1) Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

(a) In a criminal case, inconsistent with his testimony, provided that the proponent has first fairly directed the witness' attention to the statement and the witness has been given the opportunity to admit the fact and where there exists any additional evidence to corroborate the matter asserted by the prior inconsistent statement[.]

In this regard, the trial court explained that:

It is noted that Ms. Boutte has indicated that her memory was better at the time of the incident. Further, [she] has indicated some statements that may or may not be consistent with that video for which it will be up to the jurors to decide whether they are or are not. But, at this time, it's going to be received; and the State has indicated that in lieu of any further questioning [it] will adopt the video testimony of Ms. Boutte from this point forward subject to redirect after cross-examination.

Thereafter, the defense began its cross-examination of Ms. Boutte.

As at trial, the defendant questions the introduction of the recorded interview in this fashion, citing *State v. Cousin*, 96-2973 (La. 4/14/98), 710 So.2d 1065 (wherein the supreme court remarked on the limited applicability of La.Code Evid. art. 801(D)(1)(a)).

Preliminarily, we remark that the State's use of Ms. Boutte's recorded interview in this case "for unlimited purposes" is not an apparent fit within the dictates of Article 801(D)(1)(a). Although the "declarant testifie[d] at trial" and she was "subject to cross-examination concerning the statement," other aspects of Article 801(D)(1)(a) were not satisfied in this case. Namely, the proponent, the State, did not distinctly establish on what points the recorded interview was inconsistent with Ms. Boutte's brief testimony. Plainly, the inconsistency of the statement compared to the testimony is a requirement of Subparagraph (a). Neither is there indication that Ms. Boutte was "first fairly directed" to the statement or provided with an "opportunity to admit the fact," a further requirement of Subparagraph (a). Instead, Ms. Boutte briefly testified, she affirmed that her memory was better the night she gave the recorded statement

4

than at trial, the recorded interview was adopted, and she was then subject to cross-examination.

However, the larger context of the recorded statement's introduction into evidence must be considered. First, it was the defense that initially offered the recorded interview upon its questioning of Detective McCullough, although for impeachment purposes. Further, the State called Ms. Boutte to the stand and, not only introduced her statement, but offered the context of the events at issue, albeit briefly. A portion of her testimony included the in-court identification of the defendant as the shooter. Furthermore, the defense was able to cross-examine Ms. Boutte, as to both her recorded interview and any other statements made at trial. Through that cross-examination, the defense was able to squarely lodge challenges to Ms. Boutte's credibility and recall of the events at issue.

Further, we find no merit in the defendant's assertion that the introduction of the statement runs afoul of *Cousin*, 710 So.2d 1065. Rather, the present case does not present the same issue to the court. In *Cousin,* the supreme court addressed a statement purportedly introduced as impeachment evidence, but later relied upon by the prosecution as substantive evidence. Further, a number of factors in *Cousin* led the supreme court to conclude that the erroneous introduction of the statement was not harmless error. Notably, the prosecutor "urged the jury to accept the substance of the hearsay statements and to use the statements to convict defendant" during the closing arguments. *Id.* at 1073. Additionally, the statement was found to be "in the nature of a confession" by the defendant and, thus, "very strong evidence of the defendant's guilt." *Id.* at 1073. Given the importance of the statement in the context of the remainder of the State's evidence, the supreme court in *Cousin* determined that it was "unable to say" that the improper use of the evidence did not improperly influence the jury. *Id.* at 1073.

In this case, however, much of the objected-to evidence by Ms. Boutte was cumulative of other evidence in the record. In particular, Ms. Boutte's in-court testimony indicated that it was the defendant who shot Mr. Tutson. Brian Robinson testified similarly. Neither did the State obviously and impermissibly focus upon the out-of-court statement in its closing argument. In short, the record as a whole indicates that the introduction of Ms. Boutte's recorded interview, even if improper, constituted harmless error.

This assignment lacks merit.

*Ineffective Assistance of Counsel*

The defendant next asserts that his trial counsel was ineffective due to her failure to object to the State's questioning of the defendant's mother regarding the defendant's prior convictions.[2] The defendant contends that this line of questioning undermined defense counsel's earlier efforts to establish a reasonable possibility of mistaken identity of the shooter.

The Sixth Amendment of the U.S. Constitution provides a defendant with assistance of counsel for his or her defense. *See also* La.Const. art. 1, § 13. According to *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984), a defendant seeking to establish ineffective assistance of counsel must prove that 1) the defense attorney's performance was deficient *and* that 2) the deficiency prejudiced the outcome of the trial.

With regard to the question of whether the defense attorney's performance was deficient, "defense attorneys are entitled to a strong presumption that their conduct fell within the broad range of reasonable professional assistance." *State v. James*, 95-

---

[2] Louisiana Code of Evidence Article 404(B)(1) provides, in pertinent part:

> Except as provided in Article 412 [victim's past sexual behavior], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.

962, p. 5 (La.App. 3 Cir. 2/14/96), 670 So.2d 461, 465, citing *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984) and *Strickland*, 466 U.S. 668, 104 S.Ct. 2052.

Additionally, the defendant must demonstrate that the deficient assistance of counsel prejudiced his defense. *State v. Jones*, 33,657 (La.App. 2 Cir. 8/23/00), 765 So.2d 1191, *writ denied*, 00-2779 (La. 6/29/01), 794 So.2d 825. In short, the errors must have been so serious as to deprive the defendant of a fair trial. *Id.*, citing *Strickland*, 466 U.S. 668, 104 S.Ct. 2052. It is not sufficient for a defendant to show that the complained-of error had some conceivable effect on the trial's outcome. *Id.* Rather, the defendant is required to establish that, but for the error, "there is a reasonable probability the outcome of the trial would have been different." *Id.* at 1199. *See also State v. Truehill*, 09-1546 (La.App. 3 Cir. 6/2/10), 38 So.3d 1246.

We note that the courts have recognized that an ineffective assistance of counsel claim is typically more properly raised in an application for post-conviction relief than on appeal. *See State v. Leger*, 05-0011 (La. 7/10/06), 936 So.2d 108, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279 (2007). "Where the record, however, contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue may be considered in the interest of judicial economy." *Id.* at 142.

This issue arises in the context of the defendant's counsel having called the defendant's mother, Connie Walton Lewis, to the stand. Defense counsel inquired whether she had personal knowledge of whether the defendant carried weapons. Ms. Lewis responded: "I do not have personal knowledge of that, you know. I'm not saying that he didn't, because - - but, I mean, he never had any around me." She further denied having seen him with one. Defense counsel also questioned Ms. Lewis regarding the reputations of Brian Robinson and Mr. Tutson.

7

The complained of inquiries came on cross-examination when the State questioned Ms. Walton as to her son's prior convictions. It was this line of questioning to which the defendant contends his trial counsel should have objected.

In *State v. Robinson*, 09-1137, p.7 (La.App. 4 Cir. 3/24/10), 33 So.3d 1019, 1023, *writ denied*, 10-1242 (La. 12/17/10), 51 So.3d 18, the fourth circuit addressed a State's questioning of a witness regarding a defendant's prior convictions, stating that:

> The defendant asserts that the trial court erred in allowing the state to question Erica Jones as to her knowledge of his prior criminal convictions. Over defense objections, following a sidebar discussion, the trial court ruled that defense counsel put the defendant's character at issue on direct examination and, therefore, opened the door for the state to question Jones about his prior convictions. In overruling defense counsel's objection, the trial court stated the following:

> **THE COURT:**
> **Counsel, I have to beg to differ with you on that. Once you did, you did. I can't disagree with Mr. Bair on that and once you go into that—I'll [sic] just calling it the good neighbor questioning, the loving people, washing cars, watching out for everybody in the neighborhood; that you put his character into evidence . . . but knowing there is a clear case where the counsel has opened up the door to character evidence, that you--the questions were very clear and planned and it wasn't like you were shocked because you mentioned those kind [sic] of things in your opening statement.**

> The record reflects that the defense opened the door to evidence concerning the defendant's character. A witness may be cross-examined on any matter relevant to any issue in the case. La. C.E. art. 611. Character witnesses may be cross-examined concerning relevant specific instances of conduct. La. C.E. art. 405. The State has the right to rebut testimony elicited from a witness by the defense. *State v. Koon*, 96-1208, p. 25 (La.5/20/97), 704 So.2d 756; see also, *State v. Asberry*, 99-3056, (La.App. 1 Cir. 2/16/01), 808 So.2d 472. We find that under the instant circumstances, the questions were proper.

In this light, we conclude that defense counsel's failure to object to the State's questions did not constitute ineffective assistance of counsel. Although to a limited extent, Ms. Lewis's testimony on direct examination bolstered the defendant's testimony and thereby permitted the State's further line of questioning. Also, we are mindful that a defense attorney is entitled to a strong presumption that his or her

8

representation constituted reasonable professional assistance. *See James*, 670 So.2d 461.

Further, the second prong of *Strickland* also requires a demonstration that counsel's defective performance prejudiced the defendant's case. Our review of this record indicates no such prejudice. Instead, the jury had ample evidence upon which to base its verdict, without regard to the defendant's prior criminal convictions. Again, the jury heard from both Ms. Boutte and Brian Robinson that it was the defendant who shot the victim.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the defendant's conviction is affirmed.

**AFFIRMED.**